## F. S. ROYSTER GUANO COMPANY v. COMMON-WEALTH OF VIRGINIA.

### ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

No. 165. Argued March 19, 22, 1920.—Decided June 7, 1920.

A state law which taxes all the income of local corporations derived from business done outside of the State and business done within it, while exempting entirely the income derived from outside the State by local corporations which do no local business, is arbitrary and violates the equal protection clause of the Fourteenth Amendment. P. 415.

Reversed.

THE case is stated in the opinion.

*Mr. Cadwallader J. Collins* for plaintiff in error.

*Mr. J. D. Hank, Jr.*, Assistant Attorney General of the Commonwealth of Virginia, with whom *Mr. Jno. R. Saunders*, Attorney General of the Commonwealth of Virginia, was on the brief, for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

Plaintiff in error is a corporation created by and existing under the laws of Virginia, engaged in the business of manufacturing and selling commercial fertilizers. It operates a manufacturing plant in the County of Norfolk in that State and several plants in other States. From the operation of its plant in Virginia it made net profits during the year ending December 31, 1916, amounting in round figures to $260,000; and from the operation of its plants in other States during the same year made net profits amounting to about $270,000. Under the revenue law of

the State (Act of April 16, 1903, Va. Acts, c. 148, p. 155, as amended by Act of March 22, 1916, Va. Acts, c. 472, p. 793), plaintiff in error returned for taxation as income the former amount, omitting the latter. Under appropriate provisions of law the state officials added the latter amount, and assessed an income tax against plaintiff in error upon the aggregate. It petitioned the Corporation Court of the City of Norfolk for relief from so much of the tax as represented the $270,000, among other reasons upon the ground that, so far as c. 472 of 1916 taxed that part of its business which was transacted outside of the limits of Virginia, the law imposed upon plaintiff in error a burden not placed upon domestic corporations doing no part of their business in Virginia but transacting business beyond the limits thereof, such corporations, by c. 495 of 1916 (Va. Acts, p. 830), being expressly exempted from a tax on income derived from business done without the limits of the State; and hence c. 472, as applied to the business of plaintiff in error transacted beyond the limits of the State, denied to it the equal protection of the laws, in violation of the Fourteenth Amendment. Other points were raised, but they require no mention. The Corporation Court having sustained the tax, plaintiff in error applied to the Supreme Court of Appeals of the State for a writ of error and supersedeas to review the judgment. That court being of opinion that the decision was right, the application was denied and an order entered in effect affirming the judgment of the Corporation Court; whereupon this writ of error, directed to the Supreme Court of Appeals in accordance with the practice indicated in *Norfolk Turnpike Co.* v. *Virginia,* 225 U. S. 264, 269, was sued out under § 237, Judicial Code, as amended September 6, 1916, c. 448, 39 Stat. 726.

The statute thus assailed (Va. Acts 1916, c. 472) imposes an income tax of 1 per centum upon the aggregate amount of income of each person or corporation," subject

to specified deductions and exemptions; including in income "all profits from earnings of any partnership or business done in or out of Virginia," and also "all other gains and profits derived from any source whatever." Under this act, as applied to plaintiff in error by the state officers, whose action was sustained by the court of last resort, a tax was imposed upon the income derived from its plants without the State as well as from that within the State. At the same time, c. 495, Laws 1916 (p. 830), approved on the same day, was in force. This reads as follows: "Whereas, certain corporations have been organized under the laws of Virginia, and it is anticipated that certain others will be organized thereunder, which do no business within this State; therefore—1. Be it enacted by the general assembly of Virginia, That no income tax nor ad valorem taxes, State or local, shall be imposed upon the stocks, bonds, investments, capital or other intangible property owned by corporations organized under the laws of this State which do no part of their business within this State; and the mere holding of stockholders meetings in this State by such corporations required by law, shall not be construed as doing any business in this State within the meaning of this act; " with further matter not necessary to be quoted. It is not disputed that, under this act, corporations created by and existing under the laws of Virginia, and doing business in other States but none within the State except the holding of stockholders' meetings, are exempted from the payment of any income tax.

Of course, these two statutes—c. 472 and c. 495—must be considered together as parts of one and the same law; and by their combined effect, if the judgment under review be affirmed, plaintiff in error will be required to pay a tax upon its income derived from business done without as well as from that done within the State, while other corporations owing existence to the same laws and simul-

taneously deriving income from business done without the State but none from business within it, are exempt from taxation.

It is unnecessary to say that the "equal protection of the laws" required by the Fourteenth Amendment does not prevent the States from resorting to classification for the purposes of legislation. Numerous and familiar decisions of this court establish that they have a wide range of discretion in that regard. But the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. The latitude of discretion is notably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy. *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237; *Michigan Central R. R. Co.* v. *Powers,* 201 U. S. 245, 293; *Keeney* v. *New York,* 222 U. S. 525, 536; *Citizens' Telephone Co.* v. *Fuller,* 229 U. S. 322, 329; *Northwestern Life Ins. Co.* v. *Wisconsin,* 247 U. S. 132, 139. Nevertheless, a discriminatory tax law cannot be sustained against the complaint of a party aggrieved if the classification appear to be altogether illusory. Now both of the taxing provisions here in question relate to corporations organized under the laws of Virginia. It is the object of c. 495 to exempt such corporations from income taxes (as well as taxes upon intangible property) where they do no business within the State except holding their stockholders' meetings therein; manifestly in recognition of the fact that. Virginia corporations so circumstanced derive no governmental protection from the State warranting the imposition of taxes upon their incomes derived from without the State or property taxes upon their intangibles, and in recognition of the impolicy if not injustice of imposing such taxes upon them while they are liable, and presum-

ably subjected, to taxation in the State or States where their income-producing business is conducted. But no ground is suggested, nor can we conceive of any, sustaining this exemption which does not apply with equal or greater force as a ground for exempting from taxation the income of Virginia corporations derived from sources without the State where they also transact income-producing business within the State. Corporations of this class derive no more protection from the State of their origin with respect to their outside business, and are no less subject to taxation by the States in which such business is conducted, than corporations of the other class; and they are required to comply with the same laws as to the payment of organization taxes and annual registration fees and franchise taxes to the State of origin. Their business done within the State presumably is of some general benefit to the State, certainly enriches its treasury by the amount of the taxes they pay upon the income derived therefrom; and the imposition upon them under c. 472 of taxes not only upon this income but also upon income that they derive from business conducted outside of the State (similar income of the favored corporations being exempted) has the effect of discriminating against them for that which ought to operate if at all in their favor. It is obvious that the ground of difference upon which the discrimination is rested has no fair or substantial relation to the proper object sought to be accomplished by the legislation. It follows that it is arbitrary in effect; and none the less because it is probable that the unequal operation of the taxing system was due to inadvertence rather than design.

We suggest that it was inadvertent because shortly after the present suit was brought, and as if in recognition of and in order to correct the discrimination, the revenue act was amended by Act of March 14, 1918 (c. 219, Va. Acts, p. 395), providing: "Persons and corporations

doing a part of their business within the State and a part without the State, and having offices or other regular places of business both within and without the State, shall be taxed only upon such income as is derived from business transacted and property located within the State, which may be determined by an allocation and separate accounting," etc. But this was not retrospective, and, for the reasons given, we are constrained to hold that so far as c. 472 of the Laws of 1916 operated to impose upon plaintiff in error a tax upon income derived from business transacted and property located without the State because of the mere circumstance that it also derived income from business transacted and property located within the State, while at the same time, under c. 495, other corporations deriving their existence and powers from the laws of the same State, and receiving income from business transacted and property located without the State but none from sources within the State, were exempted from income taxes, there was an arbitrary discrimination, amounting to a denial to plaintiff in error of the equal protection of the laws within the meaning of the Fourteenth Amendment.

> *Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*

Mr. Justice Brandeis dissenting, with whom Mr. Justice Holmes concurs.

It is settled that mere inequalities or exemptions in state taxation are not forbidden by the equal protection clause of the Fourteenth Amendment; that the power of the State to make any reasonable classification of property, occupations, persons or corporations for purposes of taxation is not abridged thereby; and that the Amendment forbids merely inequality which is the result of clearly arbitrary action and, particularly, of action

attributable to hostile discrimination against particular persons or classes. *Beers* v. *Glynn*, 211 U. S. 477, 4˚5; *Merchants' Bank* v. *Pennsylvania*, 167 U. S. 461, 463, 464; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237. The question presented for our decision is whether the action of Virginia in subjecting its domestic corporations which transact business within the State to a tax on all their income, wherever earned, while exempting from the tax those domestic corporations which transact no business within the State, is so clearly arbitrary or invidious, as to fall within the constitutional prohibition.

The court declares the act void on the ground that no substantial reason for difference in treatment between the two classes of domestic corporations has been suggested or can be conceived; and that the classification is illusory and the States' action arbitrary. I can conceive of a reason for differentiating in respect to taxation between the two classes of domestic corporations. The following reason is, in my opinion, substantial, and shows that the classification is not illusory, nor the State's action necessarily arbitrary or invidious.

It is a matter of common knowledge that some States have, in the past, made the granting of charters to nonresidents for companies, which purpose transacting business wholly without the State of incorporation, an important source of revenue. The action of those States has materially affected the legislation of other States. Sometimes it has led to active competition for the large revenues believed to be available from this source. More often, it has led to protective measures. The legislature of Virginia may have believed that its own citizens interested in corporations whose business was transacted wholly in other States or countries, might be tempted to incorporate under more favorable laws of other States, but that such temptation would prove ineffective where the companies transacted a part of their business within

the State of Virginia and enjoyed compensating advan-, tages. If the legislature of Virginia enacted the laws of 1916 here in question because it held that view, we surely cannot say that its action was unreasonable or arbitrary. And with the wisdom of its action we have no concern.

If there were a doubt as to its reasonableness the facts which were, or may have been, before the legislature should be considered. Every private domestic business corporation makes a substantial contribution to the revenues of Virginia even if it is not subjected to property or income taxes. It pays an organization tax on incorporation; and annually thereafter both a registration fee and an annual franchise tax. These fees and taxes are graduated. For a corporation with a $1,000,000 capital the organization fee is $200; the annual registration fee and franchise tax $225.    Laws of 1903, c. 148, §§ 37, 43, 41, pp. 179, 182, 180; as amended respectively by Laws of 1912, c. 301; 1910, c. 58; 1908, c. 227. In the year 1915–1916 the fees and taxes from this source aggregated $114,-175.80.[1] The number of charters issued was 1067—many of them, as the list indicates, to companies whose business would be transacted wholly without the State of Virginia.[2] The dangers from competition incident to less burdensome corporation laws of other States had, in other connections, been considered by the Tax Commission.[3] It may well have been the case that the legislature did not wish to put in peril revenues already being received from concerns which, as they transacted no business within the State, might easily have surrendered their Virginia charters and reincorporated under the laws of the other States; and it would have been natural that

---

[1] Report of Auditor of Virginia (1916), p. 66; Report of State Corporation Commission of Virginia (1916), p. 270.

[2] Report of State Corporation Commission of Virginia (1916), pp. 226–248, 269.

[3] Report of Virginia Tax Commission (1911), p. 354.

to avert such loss the legislature should have relieved such corporations from the payment of income taxes. The Joint Committee on Tax Revision had recommended that the income tax cover "all profits from earnings of any partnership or business done in or out of Virginia," and had not suggested that domestic corporations should be exempted from it.[1] It was reasonable that other domestic corporations should have been subjected, like natural persons domiciled within the State to a tax on all income—whether earned within or without the State. Compare *Cream of Wheat Co.* v. *County of Grand Forks, ante,* 325.

The court calls attention to the Act of March 14, 1918 (c. 219, Va. Acts, p. 395), which exempts all individuals and corporations from the burden of taxation on incomes earned without the State. The effect of this act is, among other things, to remove the alleged discrimination here complained of. But its enactment does not, in my opinion, indicate that the imposition of the tax was inadvertent. To my mind it indicates rather that the legislatures of the several States may safely be entrusted with the duty of legislation.

I cannot doubt that the classification for purposes of taxation made by the Act of 1916 was within the power of the State. But if I did not think the matter clear, I should, for the reasons stated by me fully elsewhere, feel constrained to resolve the doubt in favor of the constitutionality of the act.

[1] Report of Joint Committee on Tax Revision (Virginia, 1914), p. 203.