CHENEY, COMMR. *v.* STEPHENS.

5-2019                                                330 S. W. 2d 949

Opinion delivered January 18, 1960.

[Rehearing denied February 22, 1960]

*Herrn Northcutt,* for appellant.

*Mehaffy, Smith & Williams,* by *William H. Bowen,* for appellee.

PAUL WARD, Associate Justice. The issue presented on this appeal is whether a domestic corporation must pay State income taxes on earnings derived from without the State under the provisions of the State Income Tax Act, Act 118 of the Acts of 1929 and the amendments thereto (Ark. Stats. § 84-2001, *et. seq.*).

Appellee, Stephens, Inc., derived the subject income from the purchase and sale of a large number of shares of stock in the Arkansas Louisiana Gas Company (hereinafter called Arkla). Accordingly, appellee filed an income tax return for the fiscal year ending May 31, 1957, excluding therefrom the aforementioned extrastate gain but reporting an income tax liability in excess of $19,-000.00. After a series of conferences between appellant and appellee relative to the taxability of said gain, appellant notified appellee by a letter dated April 9, 1958 of his determination that the gain was subject to Arkansas income tax. Based on that determination appellant made a computation of the additional income tax liability and appellee paid the determined amount under protest on or about April 15, 1958. Invoking jurisdiction of the Chancery Court pursuant to § 32 of Act 118 of the Acts of 1929 (Ark. Stats. § 84-2308) appellee filed a complaint containing substantially the allegations hereinafter set forth.

Stephens, Inc., formerly W. R. Stephens Investment Company, is an Arkansas corporation with its principal office in Little Rock, and the defendant is the duly appointed and acting Commissioner of Revenues for the State of Arkansas. The action is for the recovery and refund for State Income Tax illegally and erroneously collected by the defendant for the period June 1, 1956 to May 31, 1957. In 1954 plaintiff began negotiations for the purchase from the Cities Service Company (hereafter called Cities Service) of its entire stockholdings in Arkla consisting of 1,958,189 shares of $5.00 par common stock; and on October 15, 1954 a contract of purchase of said stock was executed at New York City subject to the approval of the Securities Exchange Commission. Plaintiff intended and warranted to Cities Service that it was purchasing said stock for its own account for investment, and the stock later acquired was so earmarked, accounted for and at all times held in plaintiff's investment account. Plaintiff's plan of purchase also involved an offer to purchase all shares of Arkla common stock which minority stockholders should tender for sale in New York City. In order to finance

the purchase of said stock plaintiff secured a loan commitment from the First National City Bank of New York obligating the bank to lend plaintiff all the money necessary to acquire said stock, with the understanding that the plaintiff should at all times maintain a cash margin in the bank in the sum of $5,000,000.00. Plaintiff's purchase agreement with Cities Service and also the minority stockholders required delivery of said stock to the said bank, properly endorsed for transfer and delivery. Cities Service sought and received from the Securities and Exchange Commission permission to make said sale. Pursuant to the above arrangements plaintiff purchased 1,958,189 shares of said stock from Cities Service on December 14, 1954 in the offices of said bank in New York City, and in like manner, plaintiff also purchased 1,966 shares of said stock from the minority stockholders. Promptly thereafter plaintiff clearly identified the Arkla stock so acquired by listing it in a separate account marked "Special Investment Account, Arkansas Louisiana Gas Company Common Stock", it being plaintiff's purpose and intention clearly to earmark said stock as security held for investment as distinguished from inventory within the meaning and purpose cited in the Internal Revenue Code, § 1236 and the Regulations and Rulings to that Code. At all times after acquiring said stock and at all times since that stock was sold plaintiff conducted its affairs in connection with the purchases and sales in the offices of the said bank in New York City, and the stock was at all times held by the bank. On November 16, 1956, plaintiff filed with the Securities and Exchange Commission a registration statement covering said stock proposed to be sold by an underwriting Group headed by Eastman-Dillon and Union Securities and Company in New York City. By a purchase contract dated December 10, 1956, entered into with plaintiff and the aforementioned underwriters, plaintiff contracted to sell 319,235 shares of said stock. The sale of said stock was consummated at the offices of the First National Bank of Jersey City, Jersey City, New Jersey, December 13, 1956.

The Complaint further stated that because the series of transactions involved in the acquisition and sale of the 319,235 shares of Arkla stock took place entirely without the State of Arkansas and because they were negotiated and concluded at the offices of the bank in New York City, the gain realized upon said sale was not subject to the Arkansas State Income Tax, the reasons being: (a) that such extrastate earnings are not taxable within the meaning and language of § 2 of Act 144 of the Acts of 1957 [Ark. Stats. § 84-2008(b), (i)]; (b) the extrastate gains are not covered by the definition of gross income as defined by § 8 of Act 118 of the Acts of 1929 (Ark. Stats. § 84-2008); and (c) the taxation of this extrastate income violates the due process clause and the equal protection clause of both the State and Federal Constitutions.

In the prayer the trial court was asked to declare the tax collection illegal and to order a refund to plaintiff.

On May 27, 1958, the Commissioner of Revenues filed a general denial to the above complaint.

On November 13, 1958, the parties hereto entered into a stipulation which, excluding many facts heretofore set out, reads substantially as follows: Stephens, Inc., acquired by purchase 1,950,155 shares of Arkla stock at a price of $24,501,937.50 plus dividend accruals thereon of $198,501.30 for a total of $24,700,438.80. Participating as principals with Stephens, Inc. in these purchases were two out-of-state parties referred to for convenience as the Dougherty and Union Securities Group. Stephens, Inc. acquired 1,053,085 shares of such stock and the rest of the shares were acquired by said Group. All aspects of the sales of said stocks were negotiated and handled from the offices of the First National City Bank of New York City with actual transfer of stock certificates made in the offices of the First Bank of Jersey City, Jersey City, New Jersey; all sales being consummated between November 20, 1956 and December 13, 1956. No other State income taxes have

been paid to any other than the State of Arkansas on the gain realized from said sales.

The correct amount of the certified tax exaction against appellee is not in dispute nor is it an issue in the case.

After a hearing on the pleadings and the stipulations the trial court held that the tax was wrongfully and illegally collected and ordered it to be refunded to Stephens, Inc., hence this appeal by the Commissioner of Revenues.

In an examination of the issue here involved we acknowledge the assistance received from the comprehensive findings of law and fact contained in the trial court's Memorandum Opinion and Order and from the excellent and exhaustive briefs filed by both parties. For an affirmance of the trial court's decree appellee relies on three separate and distinct grounds but two of them need not be discussed because we have concluded that the decree must be sustained on constitutional ground in conformity with former decisions of the United States Supreme Court and of this Court.

In the case of *F. S. Royster Guano Company* v. *Commonwealth of Virginia,* 253 U. S. 412, 64 L. Ed. 989, 40 S. Ct. 560, the same questions here involved were therein decided against the contention of the appellant. In that case appellant, which was a corporation domiciled in Virginia and doing business and receiving income not only from that State but from other States, returned for taxation purposes the income received only in the State of Virginia and omitted the income from the other States. The tax officials disagreed and assessed a tax against appellant based on the income received from all of the States. This determination was sustained by all of the intermediate courts and was finally appealed to the Supreme Court of the United States. The Virginia statute imposed income tax upon the aggregate amount of the income of each person or corporation including all profits from earnings received within or without the State of Virginia and also "all other gains and profits de-

rived from any source whatever''. Virginia also had another statute (c. 495, Laws 1916 [p. 830]) which exempted from taxation a corporation which was domiciled in Virginia but derived all of its income from transactions and businesses without the State. (Note that this Act is in effect the same as § 2 of Act 304 of the 1953 General Assembly of Arkansas to which we will refer later). Regarding these two Acts the Court said: ''Of course, these two statutes must be considered together as parts of one and the same law; and by their combined effect, if the judgment under review be affirmed, plaintiff in error will be required to pay a tax upon its income derived from business done without as well as from that done within the State, while other corporations owing existence to the same laws and simultaneously deriving income from business done without the State but none from business within it, are exempt from taxation''. After the Supreme Court observed that corporations could be classified upon a reasonable basis, *etc.*, it held that the classification made by the two statutes was not reasonable but illusory and proceeded to give in detail its reasons for so concluding. The Supreme Court of the United States then reversed the case holding that the tax exaction against appellant was illegal and in violation of the 14th Amendment to the Constitution of the United States.

Essentially the question presented in the case under consideration was the question considered in the case of *McCarroll, Commissioner of Revenues* v. *Gregory-Robinson-Speas, Inc.,* 198 Ark. 235, 129 S. W. 2d 254, where the Court resolved the issue against the contention of appellant here. In the cited case appellee was essentially in the same position that appellee occupies in the case under consideration in that it was a corporation domiciled in Arkansas but derived a large portion of its income from without the State. The Commissioner of Revenues exacted the tax payment against the appellee based on extrastate gain under the Income Tax Act of 1929 which is the same Act here involved. At the same time the State had another statute, Act 220 of 1931, which was similar to the Virginia statute above re-

ferred to, exempting from taxation corporations domiciled in Arkansas but deriving all of its gain from without the State. The Court stated the issue as follows: "We come next to consider the constitutionality of the exaction by the State Revenue Commissioner of the tax in question. Is Act 118 of 1929 (Income Tax Act), as construed by appellant as applied to appellee in this case, when read in connection with Act 220 of 1931, which exempts domestic corporations, doing business wholly without the State, from all income taxes, unconstitutional, because a denial of the equal protection clause of the Fourteenth Amendment to the Federal Constitution? We think that it is". The Court in the cited case further states: "We are of the opinion that these two Acts taken together impose upon appellee a discriminatory and arbitrary exaction of the tax in question and to this extent is unconstitutional and unenforceable, being violative of appellee's rights under the Fourteenth Amendment to the Constitution of the United States and Art. II, § 8 of the Constitution of the State of Arkansas". "We think the identical question presented in this case has been definitely decided against appellant by the Supreme Court of the United States in the case of *F. S. Royster Guano Co.* v. *Commonwealth of Virginia*, 253 U. S. 412, . . . under a state of facts practically identical with those in the instant case". In the cited case, at the end of the opinion, the Court again summarized its holdings with these words: "We think it is clear that Act 220 of 1931, *supra*, relieves domestic corporations doing business entirely without the State of Arkansas from the payment of any income tax to this State, and that when this Act is read in connection with the general income tax act of 1929, *supra*, that under the decision of the United States Supreme Court in the *Royster* case, *supra*, the imposition of an income tax upon a domestic corporation, doing business both within and without this State, on income derived from sources outside Arkansas denies to such domestic corporation the equal protection of the laws and amounts to the taking of its property without due process in violation of the Fourteenth

Amendment to the Constitution of the United States and Art. II, § 8, of the Constitution of the State of Arkansas''. Following the above decision, in the case of *Dunklin* v. *McCarroll, Commissioner of Revenues,* 199 Ark. 800, 136 S. W. 2d 675, the Court considered somewhat the same question here involved except that an individual and not a corporation was the taxpayer. In that case the Court considered together the 1929 Income Tax Act and Act 220 of the Acts of 1931 heretofore mentioned. Also the Court there made the distinction between the applications of the two Acts to individuals as opposed to a corporation. It affirmed there in very clear language the holding in the *Gregory* case, *supra,* stating: ''It is, therefore, settled by the former decisions of this court that domestic corporations doing business both within and without the state are not required to pay income tax to the state of Arkansas on income derived from sources outside of Arkansas''. The only difference between the factual situation and the applicable law in the two cases above decided and in the case under consideration is nominal and not substantive. In the cited cases the Court was dealing with Act 220 of 1931. Said Act has been repealed but exactly the same exemption provisions were re-enacted in § 2 of Act 304 of the Acts of 1953.

The holdings in the *Gregory* case, *supra,* and the *Dunklin* case, *supra,* have never been overturned and they appear to be decisive of the issue here involved against the contention of appellant. In fact appellant virtually concedes that these former holdings are decisive unless they can be distinguished. So indicating is the following statement contained in his brief: ''It is this and the *Royster* cases which are the main supports of Stephens' position; and it would seem that the Commissioner of Revenues must show that these two cases (Referring to the *Gregory* case and the *Royster* case) have no application here . . .''

After making the above statement appellant cites numerous cases in an attempt to discredit or distinguish the former decisions of this Court and the deci-

sion of the United States Supreme Court above referred to. We have examined carefully all of these cases but failed to find them convincing. For example, the cases of *Wiseman* v. *Interstate Public Service Co.,* 191 Ark. 255, 85 S. W. 2d 700; *Wilson* v. *Monticello Cotton Mills,* 180 Ark. 1090, 24 S. W. 2d 324; *Kansas City, Memphis & Birmingham R.R. Co.* v. *Stiles,* 242 U. S. 111; *Fidelity & Columbia Trust Co.* v. *Louisville,* 245 U. S. 54; and *Stanley* v. *Gates,* 179 Ark. 886, 19 S. W. 2d 1000; are among the citations but each of these decisions were rendered prior to the *Gregory* decision. The *Dunklin* case, *supra,* is cited, but as we have already pointed out, that case involved an individual and not a corporation. Appellant also cites two cases from other jurisdictions which he thinks discredits or are contrary to the *Gregory* case but we deem it unnecessary to discuss them since the decisions of our own Court, as heretofore pointed out, are in point and are decisive.

Appellant makes the argument that the holdings in the *Royster* case, the *Gregory* case, and the *Dunklin* case, *supra,* are not applicable to the situation here for the reason that Stephens, Inc. is merely a holding company, but we do not agree with this contention. Black's Law Dictionary defines a holding company as: "A super-corporation which owns or at least controls such a dominant interest in one or more corporations that it is enabled to dictate their policies through voting power; a corporation organized to hold the stock of other corporations; . . ." We find nothing in the record in this case which shows Stephens, Inc. to be such a company. On the other hand the Articles of Incorporation of the Stephens Company which are included in the record shows its purpose to be: "To buy, sell, lease, mortgage and exchange real estate, to buy, sell, mortgage and pledge notes, bonds, bills of exchange and other evidences of indebtedness, stocks and securities, to lend money, to build houses and other buildings and to generally conduct any such mercantile operations as may be incident and interdependent to the business'. We think it is obvious from the record in this case that

the activities of appellee in conducting the transactions and negotiations referred to in this case were not merely acts of holding stocks in other corporations.

It follows, therefore, from what has been heretofore said that the decree of the trial court must be, and it is hereby affirmed.

Affirmed.