**Petition of W. Michael MOODY.**

**No. 2035.**

Supreme Court of Alaska.

July 22, 1974.

10. See note 1 *supra*.

W. Michael Moody, in pro per.

Mary F. LaFollete, Anchorage, for Alaska Bar Assn.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FRITZGERALD, JJ.

CONNOR, Justice.

The question presented in this petition for review is whether W. Michael Moody, petitioner herein, should be enrolled in the Alaska Bar Association as an inactive rather than an active member.

Petitioner applied for admission to the practice of law in 1972. Upon passing the bar examination, he was admitted to practice on October 20, 1972, by order of this court. Thereafter, he received a bill from the Alaska Bar Association for $225, representing the membership dues of an active member for one-half of the year 1972 and all of the year 1973. He replied promptly, enclosing a check for $20, the amount of inactive dues for a two-year period. He requested inactive membership for the reason that he was employed as a law clerk for the superior court and was, therefore, prohibited from engaging in the practice of law. The executive director of the Association rejected his request.

Petitioner obtained review by the Board of Governors of the Alaska Bar Association. The action of the executive director was affirmed. The Board's findings and recommendations have been transmitted to this court. It is the Board's recommendation that petitioner be suspended from membership in the Association, subject to reinstatement under the applicable rules governing reinstatement upon suspension for non-payment of dues. Petitioner now seeks relief from this court, under AS 08.-08.220,[1] asserting that he should be properly enrolled as an inactive member of the bar. He argues that such relief should be granted because:

1. Judicial law clerks are not engaged in the practice of law as defined by Art. III, Sec. 2(c), of the Association's by-laws. Therefore, he is eligible for inactive status;

2. If petitioner's position is considered to come under the definition of the practice of law, such definition is invalid as unreasonable, and the Board exceeded its authority under AS 08.-

---

1. AS 08.08.220 provides:

"*Disciplinary proceedings and review.* Upon finally determining any cause involving the discipline, disbarment, suspension, or reinstatement of a member of the Alaska Bar, the board shall certify its findings and recommendations on the cause to the supreme court. Within 30 days after receiving the findings and recommendations, the court shall issue, in full accordance with the recommendations, an order of disbarment, suspension, reinstatement, dismissal, or otherwise, unless the accused member sooner petitions the court for review of the proceedings, findings, and recommendations of the board. If such a petition is made, the court shall promptly review the cause in the manner prescribed in the Administrative Procedure Act (AS 44.62)." (§ 14 ch. 196 SLA 1955; am § 6 ch. 178 SLA 1960).

08.080[2] in promulgating an unreasonable regulation;

3. The classification of a law clerk as an active member denies equal protection of the law to petitioner and all others similarly situated, as there is no rational basis for distinguishing him from those recognized as inactive by the Association.

Before dealing with the specific contentions on review, we think it will be helpful to set forth the general structure of the Alaska Bar Association. The Association is a creation and instrumentality of the state, AS 08.08.010.[3] The Board of Governors of the Association is empowered, under AS 08.08.080(1), to adopt reasonable rules with regard to membership and classification of membership in the Alaska Bar; members may be classified as active, inactive and honorary.[4] AS 08.08.020 provides that every person licensed to practice law in the state (except a judge of a court of record) is eligible for active membership in the Alaska Bar,[5] while AS 08.08.210 provides that no person may engage in the private practice of law unless he is an active member of the Alaska Bar.[6] Rule 2(d) of the court administrative rules precludes any employee of the Alaska court system from engaging directly or indirectly in the practice of law in any of the courts in the state,[7] while Rule 4 of the Appellate Rules specifically forbids the private practice of law by a law clerk to a justice of the Supreme Court.[8] Former Alaska Bar Rule II, § 7, states that successful applicants to the Association will be sworn in by the Supreme Court, after which the applicant is to pay the membership fee, if any, required of new members and shall be thereupon enrolled as an active member.[9]

2. AS 08.08.080. *"Powers of board.* The board may adopt reasonable rules (7) defining the practice of law . . .."

3. AS 08.08.010. *"Creation of Alaska Bar Association.* There is created an instrumentality of the state known as the Alaska Bar Association, referred to in this chapter as the Alaska Bar. . . ."

4. AS 08.08.080. *"Powers of board.* The board may adopt reasonable rules (1) concerning membership and the classification of membership in the Alaska Bar into active, inactive, and honorary members . . .."

5. AS 08.08.020. *"Active members.* Every person licensed to practice law in the state except a judge of a court of record is eligible for active membership in the Alaska Bar." (§ 4 ch 196 SLA 1955).

6. AS 08.08.210. *"Who may practice law.* No person may engage in the private practice of law in the state unless he is an active member of the Alaska Bar. . . ."

7. Rule 2. *Appointment and Compensation of Employees—Practice of Law by Personnel Prohibited.*
"(d) During his term of office or employment, neither the administrative director nor any other employee of the Alaska court system shall engage directly or indirectly in the practice of law in any of the courts of this state." (Amended by Supreme Court Order 148 dated November 26, 1971).

8. Rule 4. *Clerks to Justices Not to Practice.*
"No one serving as a law clerk, secretary, or other full-time officer or employee of this court or of a justice of this court shall engage in the private practice of law while continuing in that position; nor shall he ever participate, by way of any form of professional consultation or assistance, in any case which was pending in this court during the period that he held such position." (Amended by Supreme Court Order 112 effective November 5, 1970. Renumbered by Supreme Court Order 160 effective March 15, 1973).

9. Section 7. *Examinations; Certification of Results; Admission; Oath; Payment of Membership Fees.*
"The Board of Governors, upon receipt of the names certified by the Committee of Law Examiners, shall certify the successful applicants to the Supreme Court. Upon receiving the certification, unless objection is raised within five days, the Court will make an order admitting the applicant as an attorney at law in all of the courts of the state. . . ."

"The applicant shall pay the membership fee, if any, required of new members of the Alaska Bar for the current year, and shall thereupon be enrolled as an active member of that Association, and upon such enrollment shall be entitled to practice law in this state."

Section 2 of Article III of the Association by-laws (promulgated under AS 08.-08.080) sets forth the qualifications for inactive membership, while sections 3 and 4 detail how to change one's status from active to inactive and vice versa, and section 5 enumerates the privileges of inactive membership.[10]

A decision of the questions presented for review involves the interpretation and interrelationship of these statutes and rules, as well as an examination of the functions of the Association and the inactive membership classification.

Art. III, Sec. 2(c), of the Association's by-laws provides:

"Members who cease to practice law in the State of Alaska may apply for inactive membership to the Board of Governors. 'Practice of law' should be defined as holding a legal position with the State or Federal government or any judicial position with the State of Alaska."

As was noted above, the Board is empowered to define "practice of law" under AS 08.08.080(7). Petitioner's position is that his activities as a judicial law clerk do not fall under the definition found in this by-law, maintaining that the position of clerk is neither a "legal position" nor a "judicial position." The Board construed the term "legal position" to mean "a position in which the required services pertain to or deal with law . . . ."

While holding his position as a superior court law clerk, petitioner is prohibited from practicing law in the courts of this state by reason of Administrative Rule 2, which provides in part:

"During his term of office or employment, neither the administrative director nor any other employee of the Alaska court system shall engage directly or indirectly in the practice of law in any of the courts of this state."

Petitioner asserts that the Board's construction of by-law Art. III, Sec. 2(c), was unreasonable. He argues that the primary function of the Alaska Bar Association is to enforce proper ethical standards upon persons actually practicing law within the jurisdiction. Because petitioner cannot en-

This rule has since been replaced by Alaska Bar Rule Part I, Rule 6, Sec. 1 (effective June 8, 1973), which provides that an eligible applicant shall pay active membership fees before receiving certification to the Supreme Court for admission. If petitioner prevails in the instant petition, the validity of the present rule may come into question.

10. ARTICLE III:
"Section 2. ENROLLMENT AS AN INACTIVE MEMBER. Inactive membership in the Alaska Bar Association shall be limited to the following members:
a. A member who is totally disabled and who agrees to no longer engage in the practice of law, hold judicial office, or any legal position, may apply to the Board of Governors for inactive status. The determination of full disability shall rest exclusively with the Board of Governors and upon application. [sic]
b. Members who are over 65 years of age and who retire from the practice of law may apply to the Board of Governors for inactive status.
c. Members who cease to practice law in the State of Alaska may apply for inactive membership to the Board of Governors. 'Practice of Law' should be defined as hold-

ing a legal position with the State or Federal government or any judicial position with the State of Alaska.
Section 3. CHANGING FROM ACTIVE TO INACTIVE MEMBERSHIP.
"An active member, if in good standing, may be enrolled as an inactive member upon written request, and no rebate nor refund of any membership fee shall be granted or allowed.
Section 4. TRANSFER FROM INACTIVE TO ACTIVE MEMBERSHIP.
"An inactive member, if in good standing, may be enrolled as an active member upon written request. Upon the filing of such request and the payment of the full annual membership fee for an active member for the current calendar year, less any membership fee paid by him as an inactive member for such year, the applicant shall be immediately transferred from the inactive roll to the active roll.
Section 5. PRIVILEGES OF INACTIVE MEMBERS.
"An inactive member may attend the annual and special meetings and participate in any debates at such meetings, and may be appointed upon any committee but no inactive member shall hold office or vote."

gage in the private practice of law, he argues that the primary reason for including him as an active member is absent. Petitioner's position is that the other purposes which the Association serves are irrelevant in his case. For example, the Association may regulate the unauthorized practice of law, but as petitioner points out, in this respect, the Association's duties would encompass petitioner as a member of the general public. The Association conducts programs for the education of the public and for the betterment of the legal system. But some persons are classified as inactive members, and their dues are apparently deemed sufficient to support the work of the Association. Thus, reasons petitioner, the work of the Association, other than possibly disciplining him for ethical infractions, is irrelevant to his situation.

The Board counters this by asserting that the organized Bar, to be effective, must include within its ranks all persons who have been admitted to practice and who are engaged in any form of professional employment in either the public or private sector. The Board also points to the need for adequate financing of its activities. Unless it can define and classify the categories of active and inactive membership, it may have to carry on its functions by imposing a greater burden on fewer members, which burden should properly be borne by the entire legal profession.

We think that a proper analysis of the problem should consider not only petitioner's personal interest and advantages in being an active member, but also the reciprocal relationship between the Association and petitioner. Petitioner voluntarily applied for membership in the Association, and was granted admission after passing the bar examination and the required character investigation. By applying and being admitted he received and accepted the full benefits of Association membership. These include the right to engage in the active practice of law, as well· as to vote on any matter on which membership votes are taken, and to hold office in the Association.

The Board points out that the purposes for which the Association is organized are much broader than petitioner is willing to concede. Article II, Section 1, of the Association's by-laws provides:

"PURPOSES. The Alaska Bar shall foster the following purposes, namely:

To cultivate and advance the science of jurisprudence;

To promote reform in the law and in judicial procedure;

To facilitate the administration of justice;

To uphold and elevate the standard of honor, of integrity and of courtesy in the legal profession;

To encourage higher and better education for membership in the profession and to increase the usefulness and efficiency of the bar; and

To promote a spirit of cordiality and brotherhood among and render all proper service to the members of the bar."

Beyond this, the Board points to the need for compulsory membership in the Association on a broad basis. In common acceptance, the bar of any state is composed of all persons who have been admitted to the practice of law. By broad, inclusory membership, the Association more effectively speaks for, and is responsible to, all persons who have formally entered the legal profession. If, in classifying membership, there must be drawn subtle distinctions between persons engaged in the private or public sectors of the profession, or distinctions based upon the degree to which one's activities resemble those of lawyers in traditional private law practice, the effect is to fragment the organization and limit its cohesiveness. There may well be individual members of integrated, compulsory bar associations who would prefer not to pay dues and who would be quite happy to give up their privileges of membership. Yet, in those jurisdictions having an integrated bar, it has· been deemed in the public interest that membership be required without consideration of mere individual preference. The disadvantages to an

individual in such a system are believed to be outweighed by the advantages achieved by the profession as a whole, and by the public to whose benefit it is that the profession be governed effectively by an authoritative organization.

At this point an historical observation is in order. From late medieval times onward, the legal profession in England was always governed by a highly organized system, although the forms and degree of organization have varied according to a number of historical circumstances.[11] In the American colonies, a good deal of organization of the bar appears to have been present at the time of the American Revolution, but by the middle of the nineteenth century the bar generally was in an almost totally disorganized condition. Dean Pound refers to this as the "era of decadence" in the development of the legal profession in the United States.[12] It was only later that the need for strong bar associations, with authority over their memberships, came to be felt and acted upon. During the last fifty years a development of great significance has been the attainment of the integrated bar in a great number of the states.

In Alaska the bar was integrated in 1955 by an act of the Territorial Legislature.[13] When the original by-laws of the Association were adopted, the position of government practitioners was left somewhat unclear. The original provision, adopted on June 20, 1955, provided:

> "ENROLLMENT AS AN INACTIVE MEMBER. Any member of the Alaska Bar who is not engaged in the practice of law, or who, if in good standing, proposes to retire from the practice, may upon written request be enrolled as an inactive member. No member of the Alaska Bar practicing law, or occupying a position in the employment of or rendering any legal service for an active member or occupying a position where he is called upon to give legal advice or

counsel, or to examine the law or pass upon the legal effect of any act, document or law, shall be enrolled as an inactive member." Minutes of the Meeting of the Board of Governors, June 20, 1955.

Later in the same year the by-laws were amended by putting the following language after the first sentence of the original by-laws:

> "The Board will recognize qualified persons working for Governmental agencies, who do not accept any private practice, as inactive members of the Alaska Bar Association." By-laws of Alaska Bar, (Adopted by the Board of Governors June 20, 1955).

After statehood, the category of active membership was broadened by adoption of the current provision in 1964.

The Board argues that the language of Article III, Section 2, is plain in its intendment to cover persons such as petitioner. Further, the Association argues that the language of Article III, Section 2(c), concerning enrollment as an inactive member, makes it even more clear that one must have first been an active member before being eligible for enrollment as an inactive member:

> "c. Members who *cease* to practice law in the State of Alaska may apply for inactive membership . . . ." (emphasis supplied)

■ Returning to petitioner's contentions, we think they overlook a vital consideration. This is that a high degree of organization is one of the salient characteristics of a true profession. As Dean Pound puts it:

> "Historically there are three ideas involved in a profession: organization, learning, i. e., pursuit of a learned art, and a spirit of public service. These are essential. A further idea, that of gaining a livelihood is involved in all callings. It is the main if not the only pur-

11. R. Pound, The Lawyer From Antiquity to Modern Times (1953), 75–128.

12. R. Pound, *supra*, 223.

13. Chapter 196 SLA 1955.

pose in the purely money-making callings. In a profession it is incidental." R. Pound, *supra*, 6.

"The bar association as an organization of those practicing the profession is an essential element of professional life. It is only through organization that the spirit of public service can be developed and maintained and crucial types of public service can be rendered effectively. It is the bar association, not the individual lawyer that can maintain high educational standards insuring a learned profession, that can maintain high standards of character as a prerequisite of admission to practice, that can formulate and maintain high standards of ethical conduct in relations both with clients and with courts. The public has a deep interest in having a well organized bar part of the machinery of administering justice in a complex social and economic order." R. Pound, *supra*, 10–11.

Thus it was not merely an occupation or a trade which petitioner sought to enter when he applied for admission to the Bar. Rather, he undertook to become a member of one of the classical learned professions, which means that he assumed a number of responsibilities together with his privileges. Among these responsibilities is the reasonable support of the activities of the professional organization which is empowered to regulate and speak for that profession.

Petitioner makes the point that he is prohibited by Administrative Rule 2, promulgated by this court, from engaging in the practice of law in any of the courts of this state. That rule provides in pertinent part:

"During his term of office or employment, neither the administrative director nor any other employee of the Alaska court system shall engage directly or indirectly in the practice of law in any of the courts of this state."

Because of this condition of his employment, petitioner argues that he cannot reasonably be classified as engaging in the practice of law for the purposes of membership fees.

This overlooks, once again, the reciprocal relationship between petitioner and the Association. From the viewpoint of the Association, petitioner *is* permitted to practice law and is under no impediment preventing him from doing so. Whether, and for what length of time, petitioner chooses to engage in an employment in which he is restricted from practicing law in the courts of Alaska is something over which the Association exercises no control. In this respect petitioner is no different from lawyers employed by government agencies or private corporations who bar them from doing outside legal work and who also do not permit their employee lawyers to engage in litigation before courts. Yet many such persons unquestionably do work which is highly professional in nature and which under any reasonable view would be termed the practice of law.

Petitioner's job can be fairly labeled a legal position with the state government. Even though it can be performed by one not admitted to the bar, it requires legal skills of a high order. It entails legal research, analysis of pleadings and procedural problems, the preparation of memoranda of law, the analysis of factual material, and the rendering of assistance in countless ways to one who is acting at the center of our working legal system—the judge. Functionally, a court attorney or law clerk may be more heavily engaged in strictly legal endeavors than many private practitioners.[14]

14. Petitioner cites a number of authorities differentiating between the nature of a law clerk's duties and the practice of law, in an effort to persuade us that his work cannot constitute the practice of law. Petitioner's authorities are 111 A.L.R. 19, 45–46; 13 A.L.R.3d 1137; 7 Am.Jur.2d, attorneys at law § 88; Opinion No. 78 (1927–28), Com- mittee on Professional Ethics, Assoc. of the Bar of the City of New York and the New York County Lawyers' Association (NY 1956); ABA Op. No. 85 (1932), Opinions on Professional Ethics (1967). However, these authorities for the most part deal with the problem of what constitutes the unauthorized practice of law by one employed

Petitioner argues that because membership in the Association is not a prerequisite of his employment, he does not occupy a "legal position" within the state government. It is true that governmental entities, both state and federal, can employ persons to do certain types of legal work, and that the Association cannot prohibit such employment. The Bar, of course, cannot dictate to either the state or federal governments the terms on which they may decide to employ persons to perform work of a legal nature. This is because the Association has no positive authority over those governments. But this does not mean the Association cannot classify its membership in terms of occupational criteria and apply those criteria to persons who have sought and gained membership in the Association. For at that point the Association does have authority to affect the member himself, not the government by whom he is employed.

There are broader reasons why petitioner should be regarded as practicing law for the purposes of membership classification. In the complicated societal and economic structure in which we must live it is extremely important that the legal profession be dedicated to high standards of administration of justice, and that it be imbued with a sense of high duty to the rule of law. It is true that many lawyers entering the profession may be salaried employees of government or of some corporation. They may regard themselves as not having many interests in common with those who labor in the traditional law-firm-oriented practice of law. Yet this provides a major reason for requiring that all who seek admission to the practice of law be organized on a comprehensive basis. Without a

strong organization the idea of law as a profession is placed in serious danger. It would be incompatible with an integrated bar to have a system in which each member of the Bar would determine for himself whether active membership in the Bar was of sufficient interest to him to warrant his participation.

We hold that the Board's construction of Article III, Section 2(c), of its by-laws was reasonable and must be sustained.[15]

 Petitioner maintains that he is denied equal protection of the laws as guaranteed by the United States Constitution and Article I, Section 1, of the Alaska Constitution. He recognizes that the test to be applied in this case is whether there is a rational basis for the classification to which he is subjected.[16] To a large extent the argument here is merely a re-casting of the arguments directed to the reasonableness of the Board's construction of the by-law provision. A perusal of the by-law makes it quite apparent that the persons who are allowed to enroll as inactive members are in a quite different position from petitioner. These are:

"a. A member who is totally disabled and who agrees to no longer engage in the practice of law, hold judicial office, or any legal position, may apply to the Board of Governors for inactive status. The determination of full disability shall rest exclusively with the Board of Governors and upon application. [*sic*]

b. Members who are over 65 years of age and who retire from the practice of law may apply to the Board of Governors for inactive status.

c. Members who cease to practice law in the State of Alaska may apply for in-

---

as a law clerk to a practicing lawyer. We do not find them germane to the precise issue presented here.

15. In view of our holding it is not necessary to reach the question of whether a law clerk can be considered to occupy a "judicial position," and thereby come within the scope of Article III, Section 2(c), of the by-laws. Petitioner, of course, contends that he does not occupy a "judicial position."

16. Under the rational basis test the classification must be reasonable, not arbitrary, and must rest upon some ground having reasonable relation to the governmental objective sought to be effectuated. F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920), cited with approval in State v. Wylie, 516 P.2d 142, 145 (Alaska 1973).

active membership to the Board of Governors. "Practice of Law" should be defined as holding a legal position with the State or Federal government or any judicial position with the State of Alaska."

There are obvious reasons why the Board could decide to grant inactive status to persons totally disabled, those over 65 years of age who retire, and those who cease to practice in the State of Alaska. The Board could reasonably decide that there was no utility in compelling active membership for such persons, and that the exaction of active membership fees from such persons would be unfair. Petitioner belongs to a quite different class of persons: those who have sought and gained initial admission to the Bar of this state.

We conclude that the Board properly recommended suspension of petitioner from membership in the Alaska Bar Association. An order will be entered accordingly, with petitioner being subject to reinstatement under the applicable rules governing reinstatement upon suspension for non-payment of dues.