**LOCAL 2106, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL–CIO; William A. Neal; Kenneth Meek and Benny Wolfe, Appellants,**

v.

**CITY OF ROCK HILL, SOUTH CAROLINA; J. Emmett Jerome, in his representative capacity as Mayor of the City of Rock Hill, South Carolina; and Elizabeth Rhea, Maxine Gill, Douglas Herlong, and Melford Wilson, Jr., in their representative capacities as members of the City Council of Rock Hill, South Carolina, Appellees.**

No. 80–1526.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1981.

Decided Sept. 17, 1981.

Louis L. Lesesne, Jr., Charlotte, N. C. (Jonathan P. Wallas, George Daly, Chambers, Ferguson & Becton, P. A., Charlotte, N. C., on brief), for appellants.

Emil W. Wald, Rock Hill, S. C. (C. W. F. Spencer, Jr., Spencer & Spencer, P. A., Robert R. Carpenter, Terry B. Millar, Roddey, Carpenter & White, Rock Hill, S. C., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, and PHILLIPS and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Local 2106 of the International Association of Firefighters, AFL–CIO, and individual members (hereinafter the Firefighters) appeal the judgment of the district court against them and in favor of the City of Rock Hill, South Carolina and named municipal officials (hereinafter Rock Hill), entered after a hearing on stipulated facts.[1] Rock Hill prevented the Firefighters from expressing views on employment matters relating to them before the city council of Rock Hill. The Firefighters then sought an injunction and declaratory judgment that certain South Carolina statutes facially violated the first and fourteenth amendments or were constitutionally invalid as applied by Rock Hill. The district court, determining that "strict scrutiny" was not the appropriate test of Rock Hill's actions, and that Rock Hill had "legitimate governmen-

tal purposes" in denying Firefighters access to the public forum, denied the requested relief. Although the involved South Carolina statutes are facially constitutional, Rock Hill's reliance on them and its general policy denying employees access to open city council meetings is violative of the first and fourteenth amendments. We reverse.

I.

Rock Hill's municipal government is by council-manager—one of the alternative types provided by laws of South Carolina. S.C.Code § 5–13–10 through § 5–13–100 (1977).[2] Section 5–13–40(c) provides:

Except for the purpose of inquiries and investigations, neither the council nor its members shall deal with municipal officers and employees who are subject to the direction and supervision of the manager except through the manager, and neither the council nor its members shall give orders to any such officer or employee, either publicly or privately.

Other South Carolina statutes bearing on the issues in this case are found in South Carolina Code sections 8–17–110 through 8–17–160 relating to municipal employee grievance proceedings. Among other things, these provisions state that where a city has adopted the council/manager form of government, the city manager shall be the final arbiter of employee grievances. S.C.Code §§ 8–17–140, 8–17–160 (1977).

In July, 1972, Rock Hill's city council approved a statement of city policy applicable to the Fire Department and the Rock Hill Firefighters Association. The policy recognized the association as spokesman and representative for all employees of the fire department who requested such representation. The document stated general policies relating to wages and working conditions but indicated uncategorically that it was not a collective bargaining agreement and that the City of Rock Hill was without legal power to enter into a collective bargaining agreement.

---

1. The Firefighters' suit was brought pursuant to 42 U.S.C. § 1983.

2. South Carolina law allows each municipality to select, from several alternatives, its own form of government. S.C.Code § 5–5–10.

The Rock Hill city council regularly permits residents and other interested persons to appear and speak before it during its regularly scheduled meetings with respect to all matters involving the public affairs of the city, but prohibits city employees from discussing matters concerning their employment.

In April, 1978, the Firefighters wrote requesting a place on the agenda of the regular council meeting of June, 1978. They indicated they would submit a proposed collective bargaining agreement to the council, stating "it is our purpose to give you [city manager] and members of the city council our contract briefs for your information and study." The city responded that since it had no power to negotiate a collective bargaining agreement, it would refuse to permit the Firefighters or individual members to speak before the council.

The president of the Firefighters, on August 7, 1978, wrote for permission to appear before the city council "for reasons of investigation and inquiries." The city manager, responding that there was no investigation or inquiry before the council, refused the request.

Notwithstanding the city manager's refusal to place it on the agenda, the Firefighters' president appeared at the regular council meeting of August 14, 1978, and through legal counsel requested permission to address the council. The council declined to permit the president to speak on the issues identified by the Firefighters' attorney as pertaining to the 1972 policy statement. The attorney informed council that the Firefighters would not be asking it to deal directly with the association but only requesting the council to direct the city manager to adhere to the policy that had been in effect since 1972. The attorney also· stated that the Firefighters were not asking the council to enter into any contractual negotiations: "Again, we are not asking

you to negotiate a contract. All we are asking is that the 1972 policy be adhered to and I respectfully request that Mr. Neal be permitted to address the Council. Again only for the purpose of as specified in the Home Rule Act and that is to deal with the employees through the City Manager."

The constitutional principles governing this dispute are well-defined and need no extended discussion—the resolution of this controversy hinges on the interpretation of Rock Hill's actions as they relate to these principles. The major issue is whether the involved South Carolina statutes present a sufficient governmental purpose to justify limiting access to the council meetings based on speech content and the status of the Firefighters as municipal employees.

## II.

▪▪ The Firefighters contend that section 5–13–40(c) of the South Carolina Code is facially unconstitutional. The trial court correctly resolved that contention in favor of Rock Hill. Facially, the statute attempts to accomplish a desirable objective of the "Home Rule" movement—the elimination of political pressures from the operation of city governments. In plain terms, it simply prohibits city councils and their members from interfering with the direct supervision of city employees. South Carolina municipal councils, however, obviously retain their legislative powers and responsibilities to deal with employee and other matters that affect the operation of municipalities and it is in the exercise of this legislative function that the councils create a public forum.[3] It is Rock Hill's action, inappropriately relying on section 5–13–40(c), limiting access to this public forum that violates the first and fourteenth amendments to the United States Constitution—not the South Carolina statute.

---

**3.** Rock Hill, in selecting the council/manager form of local government, has vested executive and administrative authority in the city manager. S.C.Code § 5–13–90 (1977). Nevertheless, council, in exercising its exclusive legislative powers, is expressly authorized to "inquire into the conduct of any .office, department or agency of the municipality, make investigations as to municipal affairs and give the public information concerning them;". S.C.Code § 5–13–30(5) (1977).

The district court found justification in Rock Hill's actions, reasoning that council meetings are not a forum designed for citizens to address the public, but for citizens to address their complaints to government. This is not a valid distinction. It is conceded that council meetings were open to any citizen of Rock Hill to comment on any subject relating to city government except for the prohibition affecting city employees. Rock Hill thus provided a public forum, *Madison v. Wisconsin Employment Relations Commission*, 429 U.S. 167, 175, 97 S.Ct. 421, 426, 50 L.Ed.2d 376 (1976), and in singling out, to exclude from that forum, municipal employees wishing to discuss municipal employment matters, it violates the first and fourteenth amendments. *Madison, supra; Hickory Firefighters Association, Local 2653 v. City of Hickory*, 656 F.2d 917 (4th Cir. 1981); *Henrico Professional Firefighters Association, Local 1568 v. Henrico County*, 649 F.2d 237 (4th Cir. 1981).

■ It is true the Firefighters have no constitutional right to require the council to bargain with them. *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979) (per curiam). It is not necessary, however, to decide whether the council meetings had to be open for discussion of collective bargaining as opposed to actual negotiation since the Firefighters had made it clear that they did not even intend to discuss collective bargaining but only the council policy relating to working conditions. The Supreme Court was explicit in *Madison* and *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), that government employees have a protected right to discuss conditions of their employment in a government forum open to the public. This court recently in *Henrico, supra*, and *Hickory, supra*, made it clear that this right enunciated in *Madison* extends to firemen. Here it is conceded that the council meetings are open and, in fact, a member of the general public was allowed to address the council on the subject of Rock Hill's employment policy toward firefighters. The admitted policy concerning employees is a content-based limitation on free speech and is an impermissible classification under the equal protection clause of the fourteenth amendment.

### III.

■■ The district court utilized the traditional "rational basis" equal protection test, *see San Antonio School District v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973); *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920), to gauge the constitutional permissibility of Rock Hill's actions limiting the forum. It stated that "[t]he court is not faced with a situation in which class lines have been drawn on the basis of race or national origin . . . and would require a stricter scrutiny of the classification." *Local 2106, IAFF v. City of Rock Hill*, No. 78–1806 (D.S.C. July 14, 1980), slip op. at 13. It concluded that Rock Hill's discrimination against the Firefighters was a permissible classification as

> [t]he policy of precluding city employees from addressing city council on matters pertaining to the employees' employment while permitting non-employees to address council on these issues is fairly and substantially related to the accomplishment of legitimate governmental purposes and is valid under the United States Constitution.

*Id.*, slip op. at 19. Rock Hill's "legitimate" purposes had been described by it as being

> reasonably related to legitimate government purposes; promoting government efficiency in dealing with employee grievances; preventing political influence in administering public business and services; and giving the general public that doesn't have a special self interest at stake the greatest amount of time to address council on matters of general public interest.

*Id.* at 8. The district court incorrectly applied equal protection standards. Where state action seeks to limit the exercise of first amendment rights, the state must meet the exacting standard of strict judicial

scrutiny, advancing a compelling justification for denying a particular person or entity the right to speak. *Mosley, supra*, 408 U.S. at 101, n. 8, 92 S.Ct. at 2293, n. 8; *Henrico, supra*, at 241.

Rock Hill's asserted justifications for limiting the Firefighters' right to speak are plainly inadequate. As in *Hickory*, there is no showing in this case that allowing the Firefighters to address the council would interfere with the operation of the fire department. Further there is no indication that the Firefighters sought to "negotiate" with the council, thereby crossing the dividing line between the responsibilities of the council and the city manager. Instead, the record indicates that the Firefighters intended to address a perceived inadequacy in their communication with the manager. To cut off this area of advocacy is to effectively deny access to the one governmental body empowered to address the problem. As we said in *Henrico* and *Hickory*, advocacy in this setting cannot be equated with "negotiation," and a justification based on that premise is not sufficient to preclude the exercise of the Firefighters' first amendment rights.

Finally, Rock Hill contends that the Firefighters had an adequate alternate forum in that they could address their concerns to the city manager. While, within the facts of this case, there may be a serious question as to whether the city manager is an "adequate" alternate forum, we need not decide this issue, as the availability of an alternate forum cannot be a "compelling justification" for limiting expression in a public forum such as Rock Hill's council meetings. *Consolidated Edison v. Public Service Commission*, 447 U.S. 530, 100 S.Ct. 2326, 2335 n. 10, 65 L.Ed.2d 319 (1980); *Hickory, supra*, at 921.

### IV.

In light of the views expressed herein, the judgment of the district court in favor of Rock Hill is reversed.

*REVERSED with directions to enter a judgment, including appropriate injunctive relief, in favor of Appellants in accord with the views expressed in this Opinion.*