REQUESTED BY: Ronald L. Bartee, Chairman, Nebraska Board of Parole
You have asked whether the Parole Board may decline to approve the parole plan of an inmate who intends to live with a "girlfriend" or "boyfriend". You note that the Board has been approving such parole plans since 1993 based on the belief that disapproval would constitute discrimination on the basis of "marital status" and would require the Board to articulate a "compelling reason" for the denial.
We conclude that the Board is under no obligation to approve the parole plan of any inmate who intends to reside with a "girlfriend" or "boyfriend."
Nebraska statutes, and case law interpreting those statutes, make clear the fact that an inmate does not have a right to parole:
 The release of a committed offender on parole shall not be upon the application of the offender, but by the initiative of the Board of Parole.
Neb. Rev. Stat. § 83-1,115 (1994).
 Each committed offender eligible for parole shall, in advance of his parole hearing, have a parole plan in accordance with the rules of the Board of Parole.
Neb. Rev. Stat. § 81-1,112(1) (1994).
 In making its determination regarding a committed offender's release on parole, the Board of Parole shall take into account each of the following factors:
. . . .
(b) the adequacy of the offender's parole plan;
. . . .
 (e) the offender's family status and whether he has relatives who display an interest in him and whether he has other close and constructive associations in the community;
. . . .
 (g) the type of residence, neighborhood or community in which the offender plans to live. . . .
Neb. Rev. Stat. § 83-1,114(2) (1994).
In Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1
(1979), the Nebraska Supreme Court found that inmates do not have a constitutionally-protected conditional liberty interest in receiving a grant of parole. Using a due process analysis, the Court said:
 [T]he State may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority. . . . [T]he choice involves a synthesis of record facts and personal observations filtered through experience of the decision maker and leading to a predictive judgment as to what is best both for the individual inmate and for the community.
Id. at 8.
The Court did find that Nebraska statutes created some "expectation" of parole, but that the Board's practice of giving an inmate an opportunity to be heard, and informing the inmate of the reasons for denial, were sufficient to satisfy any due process entitlement. Id. at 16.
Recognizing that there is no constitutional or statutory right to parole, the issue becomes whether the Board can deny parole for an inmate who plans to live with a "girlfriend" or "boyfriend", while granting parole to an inmate who plans to live with a spouse, parent, sibling, or other party. This issue warrants an equal protection analysis.
The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution commands that no state "deny to any person within its jurisdiction equal protection of the laws." The U.S. Supreme Court has said: "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn,505 U.S. 1, 10 (1992), citing F.S. Royster Guano Co. v.Virginia, 253 U.S. 412, 415 (1920). Unless a classification warrants some form of heightened review because it jeopardizes the exercise of a fundamental right or it classifies people on the basis of an inherently suspect characteristic, such as race or religion, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.Nordlinger, 505 U.S. at 10, citing Cleburne v.Cleburne Living Center, Inc., 473 U.S. 432, 439-441 (1985).
Inmates whose parole plans call for them to live with "girlfriends" or "boyfriends" are not a protected class warranting a heightened level of scrutiny under the Equal Protection Clause. A policy disapproving parole plans for inmates who wish to reside with "girlfriends" or "boyfriends" would not discriminate against inmates on the basis of marital status. Marital status is an individual's status of being married or single. See, e.g., Neb. Rev. Stat. §48-1102(12) (1993). A policy disapproving the parole plans of inmates who intend to live with "girlfriends" or "boyfriends" would apply to married inmates and single inmates. Similarly, it would apply to married and single "girlfriends" and "boyfriends". It would not be the marital status of anyone that would be at issue, but the relationship between the inmate and the person with whom the inmate intends to live. So, the Board needs only a "rational basis" to disallow parole plans of inmates who intend to reside with a "girlfriend" or "boyfriend".
Marriage is a civil contract recognized under Nebraska law.Neb. Rev. Stat. § 42-101 (1993). The status of marriage confers certain benefits and responsibilities on the husband and wife. A broad variety of state and federal laws treat married couples differently from unmarried people for purposes such as taxation, inheritance, insurance, guardianship, conservatorship, adoption, licensing, real estate ownership, and evidentiary privileges. At the very least, marriage is evidence of the parties' intent to live together permanently in a family relationship. That fact alone would provide the "rational basis" needed by the Board to disallow the parole plans of inmates who intend to reside with a "girlfriend" or "boyfriend", while approving the plans of inmates who intend to live with a spouse.
Sincerely,
 DON STENBERG Attorney General
 Laurie Smith Camp Deputy Attorney General
APPROVED BY:
Don Stenberg
Attorney General