Gary L. MAYNER,
Petitioner–Appellant,

v.

William CALLAHAN,
Respondent–Appellee.

No. 88–4103.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 1989.

Decided May 4, 1989.

Patricia J. Arthur, Robin L. Kallman, Evergreen Legal Services, Institutional Legal Services Project, Tacoma, Wash., for petitioner-appellant.

Linda A. Dalton, Asst. Atty. Gen., Olympia, Wash., for respondent-appellee.

Before PREGERSON, BOOCHEVER and NOONAN, Circuit Judges.

PREGERSON, Circuit Judge:

The district court denied Gary L. Mayner's petition for a writ of habeas corpus. Mayner appeals on the grounds that (1) the Board of Prison Terms and Paroles' interpretation of R.C.W. 9.95.115[1] subjected

1. R.C.W. 9.95.115 states in pertinent part:

[t]he board of prison terms and paroles is hereby granted authorization to parole any

him to double jeopardy because the prison board declined to credit his previous jail-time toward parole eligibility after he escaped and (2) R.C.W. 9.95.115 denied him equal protection because the statute requires that the mandatory life term prisoner restart his mandatory minimum time toward parole eligibility after an escape. We hold that the district court properly denied habeas relief by rejecting Mayner's double jeopardy and equal protection arguments. We therefore affirm.

## STANDARD OF REVIEW

This court reviews a denial of a petition for writ of habeas corpus de novo. *Iaea v. Sunn,* 800 F.2d 861, 864 (9th Cir.1986); *Chatman v. Marquez,* 754 F.2d 1531, 1533–54 (9th Cir.1985), *cert. denied,* 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985).

## ANALYSIS

### I.  Double Jeopardy

The Fifth Amendment guarantee against double jeopardy protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed. 2d 656 (1969). The Fifth Amendment guarantee against double jeopardy is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Mayner argues that he was punished twice for the crime of escape and that R.C.W. 9.95.115's language stating that a prisoner convicted of first-degree murder must be "continuously confined ... for a period of twenty consecutive years less good time" before becoming eligible for parole violates the Fifth Amendment guarantee against double jeopardy.

Mayner has not suffered double jeopardy. Restarting Mayner's jail-time in determining his eligibility for parole after an escape is not unconstitutional because there is no federal constitutional right to parole. *Greenholtz v. Inmates,* 442 U.S. 1, 7–11, 99 S.Ct. 2100, 2103–06, 60 L.Ed.2d 668 (1979). Although a state may create a protected liberty interest in parole, Washington has not done so. *In re Ayers,* 105 Wash.2d. 161, 162–64, 713 P.2d 88, 89 (1986) (R.C.W. 9.95.115 does not violate due process because prisoners do not have a right to parole). Because Washington has created no right to parole for its prisoners and because the state legislature has extended only a conditional privilege to mandatory life prisoners to qualify for parole consideration, Washington has the power to define the terms of that privilege. Therefore, in determining parole eligibility, the Washington legislature may place conditions on parole eligibility, such as "continuous" confinement.

### II.  Equal Protection.

The Fourteenth Amendment states that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The equal protection clause directs that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920).

Mayner contends that he is in custody in violation of the equal protection clause of the Fourteenth Amendment because R.C. W. 9.95.115 legislatively classified and treated him differently from other prisoners "similarly circumstanced." He argues that as a mandatorily sentenced life prisoner who escaped from custody relatively late in his mandatory minimum term, he is treated much more harshly (by application of the statute) than (a) mandatorily sen-

person sentenced to the penitentiary or the reformitory, under a mandatory life sentence, who has been continuously confined therein for a period of twenty consecutive years less earned good time: *Provided,* The superintendent of the penitentiary or the reformitory, as

the case may be, certifies to the board of prison terms and paroles that such person's conduct and work have been meritorious, and based thereon, recommends parole for such person....

Wash.Rev.Code § 9.95.115 (1988)

tenced life prisoners who escape relatively early in their mandatory minimum terms, (b) mandatorily sentenced life prisoners who escape after having completed their mandatory minimum terms, and (c) prisoners who escape while serving sentences other than mandatory life, even if sentenced to more than a lifetime in number of years.

■ Mayner contends that his claims justify application of the strict scrutiny test or intermediate scrutiny test. However, parole consideration is not a fundamental right requiring a higher level of scrutiny. Nor does the statute burden any "suspect" or "quasi-suspect" class. Therefore, application of the strict scrutiny test or the intermediate scrutiny test is not required. *See Hoffman v. United States,* 767 F.2d 1431, 1435 (9th Cir.1985); *see also J.W. v. City of Tacoma, Washington,* 720 F.2d 1126, 1128 (9th Cir.1983).

■ Applying a rational basis test, we hold that Washington's treatment of mandatory life prisoners shows a fair relationship to legitimate state interests. *See Plyler v. Doe,* 457 U.S. 202, 217, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Washington contends that four interests are furthered by R.C.W. 9.95.115: (1) protecting society from dangerous offenders, (2) furthering rehabilitative goals, (3) decreasing the chance for the commission of additional offenses, and (4) deterring escapes by mandatory life prisoners who may have a heightened sense of desperation. The statute appears to further these legitimate state interests. We therefore hold that R.C.W. 9.95.115's treatment of mandatory life-term prisoners bears a fair relationship to legitimate state interests.

AFFIRMED.