Steven H. **CASWELL**, Petitioner–Appellant,

v.

Arthur **CALDERON**, Warden, Respondent–Appellee.

No. 02–17177.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2003.

Filed March 18, 2004.

Eric S. Multhaup, Esq., Mill Valley, CA, for the petitioner-appellant.

Michael J. Williams, Esq. and Stephen W. Perkins, Esq., Sacramento, CA, for the respondent-appellee.

Before O'SCANNLAIN, TASHIMA, Circuit Judges, and MATZ,* District Judge.

MATZ, District Judge.

## INTRODUCTION

On this appeal from the District Court's denial of a habeas corpus petition and denial of leave to amend the petition, we are presented with two issues. First, is the claim of petitioner Steven H. Caswell that the California Board of Prison Terms ("the Board") violated the Ex Post Facto Clause when it calculated his term of confinement moot, because he has already served the sentence the Board initially imposed and remains in prison only because the Board subsequently rescinded his parole release date? Second, should the petitioner be granted leave to amend his petition to add new constitutional claims?

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253 and we affirm in part and reverse in part. In doing so, we hold that:

(1) Caswell's Ex Post Facto claim is moot, and thus it is unnecessary to address the merits of that claim.

(2) Caswell should be granted leave to amend his habeas petition to add a due process claim, but not an equal protection claim.

## BACKGROUND

The facts of this case are fully recited in *In re Caswell,* 92 Cal.App.4th 1017, 112 Cal.Rptr.2d 462; 92 Cal.App.4th 1017, 112 Cal.Rptr.2d 462 (2001). In short, in May 1976, Caswell was convicted of four counts of kidnapping for the purpose of robbery, for which he received an indeterminate life sentence with the possibility of parole. Caswell was also convicted of four counts each of first degree robbery, assault with a deadly weapon and attempted murder. His prison sentences as to those counts were stayed.

### I. The Board's 1986 Decisions

Caswell became eligible for parole in April 1983. In March 1986, after previously denying Caswell a parole release date four times, the Board found Caswell suitable for parole under the Uniform Determinate Sentencing Act ("DSL"). The Board calcu-

---

* The Honorable A. Howard Matz, United States District Judge for the Central District of California, sitting by designation.

lated Caswell's sentence under the DSL as 391 months (32 years and 7 months), with a December 2006 release date.

However, because Caswell committed his crimes prior to the DSL's effective date, the Board reconvened in June 1986 to re-calculate Caswell's release date under the Indeterminate Sentence Law ("ISL"), which was in effect at the time of Caswell's crimes. Using the ISL, the Board calculated Caswell's sentence to be 293 months (24 years and 5 months), with a September 2000 release date. [1] This is the sentence and release date that Caswell now challenges.

## II. The Board's Subsequent Rescission of Caswell's Parole Release Date

In March 1999, after conducting a re-scission hearing, a panel of Board members unanimously found good cause to re-scind Caswell's September 2000 parole release date. As support for its finding, the Board reasoned that (1) Caswell's crime was very serious; (2) the granting panel did not consider the stayed convictions; (3) the granting panel improperly found the fact that Caswell did not actually shoot any victim to be a mitigating factor, rather than an aggravating factor; (4) Caswell minimized his role in the crime; and (5) the granting panel "missed the point" in assessing Caswell's role in the attempted murder of one of the victims. *In re Caswell*, 92 Cal.App.4th at 1030, 112 Cal.Rptr.2d at 471–72.

## III. Caswell's Habeas Petitions

In Caswell's first federal petition, filed in 1986 in the Eastern District of California, he challenged the trial court's failure to give a proper aiding and abetting jury instruction. The district court dismissed that petition because of Caswell's failure to exhaust his state court remedies. In 1991, after exhausting those remedies, Caswell filed another habeas petition in the Eastern District of California, again challenging the jury instruction. In 1993, the district court ruled that the trial court did not err, and it granted summary judgment to the State. This court initially affirmed the district court's ruling, but subsequently reversed and remanded on rehearing. The United States Supreme Court granted certiorari, vacated our decision on rehearing, and remanded the case. On remand in 1997, we affirmed the district court's grant of summary judgment to the State.[2]

On October 20, 1997, following our ruling, Caswell informed the district court that he intended to proceed with his claim for relief based on the Board's alleged violation of the Ex Post Facto Clause. While the parties engaged in discovery on that claim, Caswell filed a new habeas petition in state court, challenging the Board's 1999 decision to rescind his then-scheduled 2000 parole release date. Eventually, on January 15, 2002, the California Supreme Court denied review of the California Court of Appeal's dismissal of that petition.

Also on January 15, 2002, Caswell filed a motion for summary judgment on his Ex Post Facto claim and sought leave to amend his habeas petition to add equal protection and due process challenges to the Board's 1999 rescission of his parole release date. On July 30, 2002, the district court denied both Caswell's motion for summary judgment and his request for leave to amend his habeas petition. On

1. The Board that issued this decision shall be referred to as "the granting panel."

2. Part of this tangled procedural history is reflected in this Court's 1997 decision. *Cas-well v. Calderon,* 116 F.3d 483 (9th Cir.1997) (as amended on denial of rehearing) (unpublished memorandum disposition).

September 9, 2002, the district court entered judgment in favor of the State.

## STANDARD OF REVIEW

The district court's denial of Caswell's § 2254 petition is reviewed de novo. *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).[3] The district court's decision to deny leave to amend is reviewed for abuse of discretion. *Pierce v. Multnomah County,* 76 F.3d 1032, 1043 (9th Cir.1996).

## DISCUSSION

### I. The Nature of Caswell's Ex Post Facto Claim

Caswell argues on appeal that the Board violated the Ex Post Facto Clause by failing to apply two "rules of practice" in effect in May 1976, when he committed the crimes: (1) All prisoners similarly situated were released within five years of being found parole suitable ("the five-year rule"); and (2) Separate assessments for contemporaneous offenses occurring in a single transaction were rarely, if ever, imposed in calculating prisoners' sentences, and if they were, the additional assessments were limited to two years ("the separate assessment rule"). Caswell contends that had the Board properly applied the above mentioned "rules of practice," he would have been released on parole in the early 1990s.

### II. Mootness

■ Neither party briefed the issue of mootness in the proceedings before either the district court or this Court. However, we must consider jurisdictional issues even when they are not raised by the parties.

*Bernhardt v. County of Los Angeles,* 279 F.3d 862, 871 (9th Cir.2002).

■ A case is moot if it does not satisfy the case-or-controversy requirement of Article III, § 2, of the Constitution. *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). "The case-or-controversy requirement demands that, through all stages of federal judicial proceedings, the parties continue to have a personal stake in the outcome of the lawsuit." *United States v. Verdin,* 243 F.3d 1174, 1177 (9th Cir.2001) (internal quotation marks and citation omitted). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer,* 523 U.S. at 7, 118 S.Ct. 978 (quoting *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). A challenge to a prison sentence becomes moot once the sentence has been served unless the petitioner continues to suffer collateral consequences. *United States v. Palomba,* 182 F.3d 1121, 1123 (9th Cir. 1999).

■ We find that Caswell's Ex Post Facto challenge is moot. First, Caswell has already served the term of confinement initially set for him. He remains in prison beyond his scheduled September 2000 release date not because of any decision made by the granting panel in June 1986, but because of the Board's subsequent decision in 1999 to rescind his parole release date. It is of course true that if Caswell actually had been released in the early 1990s, as he claims he should have been

---

3. We note that Caswell filed his first federal habeas petition in 1986, before the enactment of AEDPA in 1996. Although AEDPA does not apply to habeas petitions that were pending on the date of its enactment, *Lindh v. Murphy,* 521 U.S. 320, 337, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), AEDPA did not change the standard of review for a district court's denial of habeas relief. *Sanders v. Ratelle,* 21 F.3d 1446, 1451 (9th Cir.1994). Therefore, AEDPA does not affect our analysis.

under 1976 parole release "rules of practice," then in 1999 the Board would have had nothing to rescind. However, the Board's 1999 decision was not an "actual collateral *consequence* [ ]" of the Board's 1986 calculation of Caswell's parole release date. *Zegarra–Gomez v. INS*, 314 F.3d 1124, 1127 (9th Cir.2003) (emphasis added).

Moreover, Caswell's Ex Post Facto challenge is moot because **we** cannot provide Caswell with any effective relief. *See Spencer*, 523 U.S. at 7, 118 S.Ct. 978 (injury must be "likely to be redressed by a favorable judicial decision.") A remand to the Board with instructions to re-calculate Caswell's parole release date under the pre–1986 "rules of practice" would be meaningless precisely because in 1999 the Board determined that Caswell was not even eligible for parole. Thus, in order for this Court to provide Caswell with effective relief, **we** would also have to vacate the Board's 1999 decision. However, as of this point **we** cannot do so because Caswell has not yet established that the Board committed constitutional error in 1999. Because Caswell's Ex Post Facto claim is moot, we need not address the district court's rejection of this claim on the merits.

### III. Caswell Should Be Granted Leave to Amend His Habeas Petition to Include a Due Process Claim, But Not an Equal Protection Claim.

On January 15, 2002, Caswell sought leave to amend his habeas petition to include equal protection and due process challenges to the Board's 1999 rescission of his parole release date. The magistrate judge recommended denying leave to amend because the claims were futile. The district court adopted the magistrate's recommended result, but relied exclusively on what it believed to be the unexplained three-year delay between the Board's 1999 rescission of Caswell's parole release date and Caswell's 2002 request for leave to amend. We affirm in part and reverse in part.

### A. The Legal Standard for Granting Leave to Amend

Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In reviewing a district court's denial of leave to amend, this court considers: "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." *Bonin v. Calderon*, 59 F.3d 815, 844–45 (9th Cir.1995) (applying Rule 15(a) in a habeas case).

### B. The Equal Protection Claim

■ We agree with the magistrate judge that Caswell's equal protection claim is futile. Therefore, the district court did not abuse its discretion when it denied Caswell leave to add an equal protection claim to his habeas petition. First, Caswell has not exhausted his state remedies on this claim. Caswell never mentioned the Equal Protection Clause or any theory of equal protection in his petition for review to the California Supreme Court. *Gatlin v. Madding*, 189 F.3d 882, 887–88 (9th Cir. 1999) (petitioner did not exhaust his due process claim when he failed to present it in petition for review to the California Supreme Court).

■ Second, the legal basis for Caswell's equal protection claim is tenuous. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir.1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend."). "The equal protection clause directs that 'all persons similarly circumstanced shall be treated alike.'" *Mayner v. Callahan*, 873 F.2d 1300, 1301 (9th Cir.1989) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989

(1920)). However, Caswell does not contend that California's parole rescission provisions drew any distinction among similarly situated prisoners or that the Board applied them unevenly in a systematic manner. *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991) (petitioner failed to state an equal protection challenge to his sentence because he did not allege any facts establishing that Washington's sentencing law was applied unevenly in a systematic manner). Nor does Caswell argue that the Board treated him differently because he is a member of a particular class, suspect or otherwise. *Id.* ("There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises."). Therefore, the district court did not abuse its discretion when it denied Caswell leave to add an equal protection claim to his habeas petition.

### C. The Due Process Claim

■ Caswell contends that the Board's decision in his case was arbitrary and capricious because it was not supported by evidence. This contention, if true, supports a violation of the Due Process Clause, not the Equal Protection Clause. *McQuillion v. Duncan*, 306 F.3d 895, 906 (9th Cir. 2002) (due process requires that the rescission panel had "some evidence to support its finding of good cause" to rescind parole) (internal quotation marks omitted), *remanded to* 253 F.Supp.2d 1131 (C.D.Cal. 2003), *aff'd on other grounds*, 342 F.3d 1012 (9th Cir.2003).

We disagree with both the magistrate judge and the district court regarding whether Caswell's due process claim is futile and whether Caswell unduly delayed in raising the claim. We therefore reverse the district court's denial of leave to amend to add that claim. In doing so, we acknowledge that we rely heavily on Ninth Circuit opinions that were issued after the district court's June 2002 rulings.

#### 1. *Futility*

■ Caswell's due process claim is not futile. First, Caswell has exhausted his state court remedies with regard to the claim. In his petition for review to the California Supreme Court, Caswell argued that the Board did not point to any factual basis in the record to support its conclusion that the 1986 panel improperly considered the kidnapping of one of the victims, *McQuillion*, 306 F.3d at 905, thus indicating to the court the "factual basis supporting the claim" he now wishes to present. *Baldwin v. Reese*, —— U.S. ——, 124 S.Ct. 1347, 158 L.Ed.2d 64, No. 02–964, slip op. at 5 (U.S. Mar. 2, 2004) (2004 WL 372501). Further, Caswell identified the source of his claim as "the Constitution, which guarantees that the State may not deprive a person of liberty without due process of law," and alerted the state courts to the federal nature of his invocation with several citations to *In re Powell*, 45 Cal.3d 894, 248 Cal.Rptr. 431, 755 P.2d 881 (1988), a California case analyzing the federal Due Process Clause. *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir.2003) (en banc) ("[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."). Together, Caswell's identification of the factual predicate for his challenge and the references in his petition to the federal constitution and a case discussing the federal due process clause sufficed to alert the California Supreme Court to the federal nature of his claim, and thus to provide that court with a "fair opportunity" to address it. *Cf. Baldwin*, slip op. at 5 ("The petition refers to provisions of the Federal Constitution in respect to *other* claims but not in respect to this one. The petition provides no citation of any case that might have alerted the court to the alleged federal nature of the claim. And the petition does not even

contain a factual description supporting the claim.").

■ Second, based on the current record, we cannot conclude that Caswell's due process claim is futile due to lack of merit. Rescission of a prisoner's parole does not violate due process so long as "*some* evidence supports the decision." *McQuillion*, 306 F.3d at 904 (quoting *Superintendent v. Hill*, 472 U.S. 445, 456, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (emphasis in original)). That is not an exacting standard, so Caswell faces a difficult challenge in attempting to establish that the Board's rescission of his parole release date violated due process. However, he is entitled to try. In 2001, the California Court of Appeal examined the rescinding panel's decision to revoke Caswell's parole. It began its analysis with this observation:

> The record of the Board's actions might suggest to some readers that the 1999 panel had determined Caswell's fate before the hearing commenced. The en banc recommendation that a rescission hearing be held—purportedly because the 1986 panel improvidently granted parole—was made without benefit of a transcript of the 1986 hearing, and the rescinding panel did not have the 1982 and 1985 hearings' transcripts, at which the offenses and Caswell's participation were extensively discussed. In light of Caswell's exemplary conduct throughout the period of his incarceration, one might question whether the determinations of either panel represented a predetermined conclusion in search of a justification, supported by little more than makeweight rationalizations for the rescission.

*In re Caswell*, 92 Cal.App.4th at 1029–30, 112 Cal.Rptr.2d at 471. The Court of Appeal proceeded to reject as constitutionally deficient four of the five grounds the rescinding panel used to justify its decision.

*Id.* at 1030–34, 112 Cal.Rptr.2d 462, 472–475.

Even as to the one ground relied on by the rescinding panel that the Court of Appeal did find was supported by "some evidence"—namely, that the granting panel's conclusion was at odds with the evidence at trial—the court noted that "reasonable minds could differ." *Id.* at 1034, 112 Cal.Rptr.2d 462, 475. Indeed, the Court of Appeal may have betrayed its own doubts about that finding by describing itself as "*constrained* to agree [with the rescinding panel that] there was 'some evidence' [that the granting] panel failed to adequately consider the gravity of Caswell's criminal acts against [one of the victims]." *Id.* at 1034–35, 112 Cal.Rptr.2d 462, 475 (emphasis added).

Caswell's argument that the rescinding panel did not base its decision on any evidence raises questions of fact that require examination of both the granting panel's and rescinding panel's decisions. *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988) (holding that district court abused its discretion in denying leave to amend answer to include affirmative defense of settlement; proposed amendment was not futile because it raised "[q]uestions of fact"). Unfortunately, the rescinding panel's written decision is not in the district court file. This reinforces our conclusion that Caswell's due process claim cannot be deemed futile on its face.

### 2. *Undue Delay*

■ The district court relied exclusively on the factor of undue delay in denying Caswell leave to amend. According to the district court, Caswell provided "no explanation" for the "almost three-year delay" between the Board's 1999 parole rescission and Caswell's 2002 request for leave to amend. We disagree.

The district court record demonstrates that Caswell actually did not delay in seeking leave to amend. Caswell could not

raise his federal due process challenge to the Board's 1999 rescission until he had exhausted his state remedies on that claim. *Peterson*, 319 F.3d at 1155 ("A federal court may not grant habeas relief to a state prisoner unless he has properly exhausted his remedies in state court."). Caswell requested leave to amend his federal habeas petition to add the due process claim on the very day that the California Supreme Court denied review of that claim. Thus, far from delaying, counsel pursued Caswell's due process claim as quickly as he possibly could—not waiting even one day after exhausting Caswell's state remedies. Few petitioners have displayed as much persistence as Caswell in seeking release, and these efforts to exhaust his state remedies provide a satisfactory explanation for the timing of his motion to amend. It was an abuse of discretion to deny him leave to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir.1987) (undue delay did not support denying leave to amend where plaintiffs provided "satisfactory explanation" for their delay in naming a new defendant).

## CONCLUSION

Because Caswell's Ex Post Facto challenge to the Board's 1986 calculation of his term of confinement is moot, we AFFIRM the district court's decision to award judgment to the State on the Ex Post Facto claim. We also AFFIRM the district court's denial of leave to amend Caswell's habeas petition to add an equal protection claim. However, we REVERSE the district court's denial of leave to add a due process claim.

This case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.