# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JIMMY D. CARTY,
            *Petitioner-Appellant,*

v.

CRAIG NELSON, Warden; BILL
LOCKYER, Attorney General,
            *Respondents-Appellees.*

No. 03-56766

D.C. No.
CV-01-00721-IEG/
JFS

ORDER
AMENDING
OPINION AND
DENYING THE
PETITIONS FOR
REHEARING AND
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, District Judge, Presiding

Argued and Submitted
May 3, 2005—Pasadena, California

Filed October 17, 2005
Amended December 15, 2005

Before: Harry Pregerson, Raymond C. Fisher, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Pregerson

16377

**COUNSEL**

Matthew D. Brown, CJA, San Francisco, California (argued); Christopher R.J. Pace, Cooley Goodward LLP, San Diego, California (briefed), for the petitioner-appellant.

Bradley A. Weinreb, Deputy Attorney General, San Diego, California, for the respondents-appellees.

**ORDER**

At slip op. 14213, change "the San Diego County District Attorney contends" to "the State contends."

With this amendment, the panel has voted to deny the Appellant's petition for panel rehearing and for rehearing en banc, and the panel voted to deny the Appellee's petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petitions filed by both parties for panel rehearing and for rehearing en banc are DENIED.

**OPINION**

PREGERSON, Circuit Judge:

In April 1991, California prisoner Jimmy D. Carty ("Carty") pled guilty to seven counts of Committing a Lewd and Lascivious Act Upon a Child Under the Age of 14, in violation of California Penal Code section 288(a). Carty was sen-

tenced to state prison for a term of sixteen years. Eight years later — a day before Carty was to be released on parole — the San Diego County District Attorney filed a civil commitment petition against Carty pursuant to California's Sexually Violent Predators Act ("SVP Act").

Consequently, in June 1999, a civil commitment hearing was conducted in San Diego Superior Court to determine whether Carty was a sexually violent predator ("SVP") who required civil commitment for a period of two years. After this hearing, Carty was classified as an SVP likely to engage in sexually violent criminal behavior against others, and ordered civilly committed in Atascadero State Hospital.

Carty appealed his June 1999 civil commitment to the California Court of Appeal and the California Supreme Court. Both courts ruled against Carty.

In May 2001, near the end of Carty's first civil commitment term, the San Diego County District Attorney petitioned for Carty's re-commitment. The District Attorney was successful in re-committing Carty to a second two-year term in October 2001.

In April 2003, while Carty was serving his second term, Carty filed a *pro se* habeas petition under 28 U.S.C. § 2254 in federal district court challenging his initial June 1999 civil commitment. Carty contended that his Sixth Amendment right to confront witnesses and his Fourteenth Amendment due process rights were violated at the June 1999 commitment hearing because the superior court relied on inadmissible hearsay consisting of victim statements contained in Carty's probation report.

In May 2003, while review of Carty's federal habeas petition was pending in district court, the San Diego County District Attorney initiated another civil commitment proceeding in state court to re-commit Carty for a third term. This time,

the District Attorney was unsuccessful in re-committing Carty. Specifically, in October 2003, a jury found that Carty should no longer be civilly committed under the SVP Act. Accordingly, the superior court ordered Carty to be immediately released from civil commitment.

Shortly before his release from civil commitment, the district court denied Carty's pending habeas petition with prejudice. Carty now appeals the district court's order denying his habeas petition. We have jurisdiction under 28 U.S.C. § 2253(a), and as discussed below, we deem the controversy live, reach the merits, and affirm.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  California's Sexually Violent Predators Act

California's SVP Act requires that a prisoner who was previously convicted of certain enumerated violent sex crimes be evaluated by the Department of Corrections, the Board of Prison Terms, and the California Department of Mental Health six months before being released from prison to determine whether the prisoner may be a potential SVP. *See* Cal. Welf. & Inst. Code § 6601(a)(1). This screening involves review of the prisoner's background and criminal record. *See id.* § 6601(b). If the Department of Corrections concludes that the prisoner is likely to be an SVP, the prisoner is referred to the Department of Mental Health for a "full evaluation" to determine whether the prisoner meets the other criteria in the SVP Act. *See id.*

This full evaluation must be conducted in accordance with a standardized assessment protocol by at least two practicing psychiatrists or psychologists designated by the Department of Mental Health. *See id.* § 6601(c) & (d). The two evaluators must agree that the prisoner has a mental disorder and is dangerous within the meaning of section 6600 for proceedings to

go forward under the SVP Act.[1] *See id.* § 6601(d). If the two evaluators agree that the prisoner should be civilly committed under the SVP Act, the Department of Mental Health will then transmit a request for a petition for commitment to the county in which the alleged SVP was convicted. At that time the Department of Mental Health will also send the county copies of the psychiatric evaluations prepared by the evaluators and any other supporting documentation. *See id.* § 6601(d), (h), & (i).

"If the county's designated counsel [either the district attorney or county counsel] concurs with the recommendation, a petition for commitment shall be filed in the [county's] superior court . . . ." *Id.* § 6601(i). Once the petition for civil commitment is filed in the superior court by the county's designated counsel, a superior court judge will then hold a "probable cause hearing." *Id.* § 6602(a). At this hearing, the prisoner is entitled to assistance of counsel.

The superior court judge will determine at the hearing whether there is probable cause to believe that the prisoner is likely to engage in sexually violent, predatory criminal behavior after being released from prison. *See id.* If the judge determines there is no probable cause, the judge shall dismiss the petition for commitment. If, however, the judge determines that probable cause exists, the judge must order the prisoner to remain in custody pending a civil commitment trial to determine whether the prisoner is, by reason of a diagnosed mental disorder, a danger to the health and safety of others and likely to engage in acts of sexual violence upon release from prison.

---

[1] If the two Department of Mental Health evaluators disagree whether the statutory criteria are present, "two independent professionals" must be selected and "further examination" of the alleged SVP must be conducted. *See* Cal. Welf. & Inst. Code § 6601(e); *see also id.* § 6601(f) & (g). "[A] petition to request commitment . . . shall only be filed if both independent professionals . . . concur that the person meets the criteria for commitment . . . ." *Id.* § 6601(f).

Despite the fact that the commitment trial is civil in nature, the prisoner is nonetheless "entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports." *Id.* § 6603. If the prisoner is indigent, then she or he is entitled to court-appointed counsel and court-appointed experts. If the prisoner or county's designated counsel do not demand a jury trial, a bench trial will be conducted. *Id.* § 6603(e). The court or jury shall determine whether, beyond a reasonable doubt, the prisoner is a sexually violent predator. *Id.* § 6604. A unanimous verdict is required in any jury trial. *Id.* § 6603(f). "If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct that the person be released at the conclusion of the term for which he or she was initially sentenced." *Id.* But if the court or jury determines following a trial that the person is a sexually violent predator, then the prisoner is deemed an SVP and civilly committed for two years in a facility designated by the California Department of Mental Health. *See id.* § 6604. The SVP is then committed to the custody of the Department of Mental Health "for appropriate treatment and confinement in a secure facility . . . ." *Id.*

An SVP may not be civilly committed for more than two years unless a new petition for commitment is filed and a subsequent re-commitment is obtained pursuant to the same safeguards detailed above. *See id.* Once every year, the civilly committed SVP has a right to a "show cause" hearing to determine whether her or his condition has changed such that she or he no longer poses a danger to others. *See id.* § 6605. If the superior court at the show cause hearing determines that the SVP's condition has changed, then another hearing is held by the court to permit the State to show that the SVP remains a danger to others. Again, if the prisoner or county's designated counsel do not demand a jury trial, a bench trial will be conducted to determine whether the SVP remains a danger to

others. If the court or jury finds in favor of the civilly commit-ted SVP, then the person must be released. If, however, the court or jury finds in favor of the State, the person is re-committed for two more years. *See id.* §§ 6605, 6608.

### B. Carty's Underlying Criminal Offenses and Subsequent Civil Commitment as an SVP

In April 1991, Carty entered into a plea agreement on seven counts of Committing a Lewd and Lascivious Act Upon a Child Under the Age of 14, in violation of California Penal Code section 288(a). Carty admitted that two of the offenses involved sexual contact against his sons. Carty's guilty plea on the remaining five counts was entered pursuant to *People v. West*, 91 Cal. Rptr. 385 (1970). This meant that Carty did not admit the specific details about his conduct on the remain-ing five counts when he pled guilty. *See In re Alvernaz*, 8 Cal. Rptr. 2d 713, 718 (1992) (stating that a plea proffered under *People v. West* is a plea of *nolo contendere* that does not admit a factual basis for the plea). After Carty entered his guilty plea, a probation report was prepared. The probation report relied on and summarized police reports that contained statements from the victims and their parents. Carty was sen-tenced to sixteen years in state prison.

In April 1999, one day before Carty was to be released on parole, the San Diego County District Attorney filed a petition with the San Diego Superior Court to have Carty civilly com-mitted for a period of two years under the SVP Act. To civilly commit Carty as an SVP, the District Attorney needed to prove beyond a reasonable doubt that: (1) Carty had two pred-icate crimes involving "substantial sexual conduct;"[2] (2) Carty

---

[2]" 'Substantial sexual conduct' means penetration of the vagina or rec-tum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender." Cal. Welf. & Inst. Code § 6600.1. In this case, all of the "sub-stantial sexual conduct" involved masturbation. California courts have determined that "masturbation under the [SVP Act] encompasses any touching or contact, however slight, of the genital of either the victim or the offender, with the requisite intent . . . ." *People v. Chambless*, 88 Cal. Rptr. 2d 444, 451 (1999).

had a mental disorder which made him a danger to others; and
(3) Carty was likely to re-offend on account of his mental dis-
order. *See* Cal. Welf. & Inst. Code §§ 6600(a)(1), 6604.

On April 30, 1999, Carty appeared before the superior
court and waived his right to a probable cause hearing. The
superior court scheduled another hearing for June 23, 1999,
and ordered Carty to be returned to custody. When Carty
returned to the superior court, he waived his right to a jury
trial.

On June 24, 1999, a civil commitment hearing was held
before Superior Court Judge Norbert Ehrenfreund to deter-
mine whether Carty was an SVP who required civil commit-
ment. No witnesses were called, and the case was decided by
the superior court judge solely on documentary evidence.
Carty's counsel did not object to admission of the reports pre-
pared by the State's mental health experts as evidence that
Carty had two predicate crimes involving "substantial sexual
conduct" (the second element) and that Carty had a mental
disorder that made him a danger to others (the third element).
Carty's counsel, however, contested the admission of the pro-
bation report as proof that Carty's conduct in two of his *West*
offenses involved "substantial sexual conduct" (the first ele-
ment). Carty objected to the use of the probation report
because he contended that it contained inadmissible hearsay.

Notwithstanding Carty's objections, the superior court
judge admitted the probation report into evidence. The proba-
tion report provided the crucial evidence for the state court to
conclude that Carty's acts in two of his *West* offenses
amounted to "substantial sexual conduct." On the basis of this
finding, the superior court ruled that Carty was an SVP and
ordered him to be civilly committed for two years. Carty
appealed his two-year civil commitment first to the California
Court of Appeal, and then to the California Supreme Court.

## C.   Carty's California Appellate Proceedings

In his appeal to the California Court of Appeal, Carty contended that the superior court judge erred in civilly committing him as an SVP in June 1999. According to Carty, he should not have been deemed an SVP because (1) the probation report used at his initial commitment hearing was based on multiple levels of hearsay and therefore inadmissible, and (2) the admission of the probation report at the commitment hearing violated his Sixth Amendment right to confront the witnesses against him and his Fourteenth Amendment due process rights.

The California Court of Appeal rejected Carty's hearsay argument on the basis that California Welfare and Institution Code section 6600(a) is a statutory hearsay exception that permits documentary evidence to be used to prove the details underlying the commission of an offense that led to a prior conviction.[3] The court also concluded that because the SVP Act entails a civil, and not a criminal, proceeding, the Sixth Amendment right to confront witnesses does not attach. Finally, the California Court of Appeal held that Carty's due process rights were not violated because Carty had the ability to call witnesses and to challenge the accuracy of the probation officer's report. According to the California appellate court, the civil commitment proceeding did not violate Carty's due process rights to confrontation and cross-examination, and the procedures and safeguards prescribed by the SVP Act meet due process standards.

---

[3]"Conviction of one or more of the crimes enumerated in this section shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. The existence of any prior convictions may be shown with documentary evidence. *The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health.*" Cal. Welf. & Inst. Code § 6600.1 (emphasis added).

After this unfavorable decision, Carty sought review by the California Supreme Court. On July 19, 2000, the California Supreme Court summarily denied Carty's request for review. Following his failures in the California State Courts, Carty filed a *pro se* habeas petition in the United States District Court for the Southern District of California.

## D.   Carty's Federal Habeas Proceedings

On April 23, 2001, while Carty was serving his initial two-year term imposed by the San Diego Superior Court in June 1999, he filed a *pro se* federal habeas petition, challenging his June 1999 civil commitment. Carty argued that the superior court violated his Sixth Amendment right to confront the witnesses against him and his Fourteenth Amendment due process rights by relying on inadmissible hearsay to conclude that his conduct was "substantial sexual conduct."

On May 3, 2001, while Carty's habeas petition was pending before the district court — but before the two-year term of his June 1999 commitment expired — the San Diego County District Attorney initiated a second civil commitment proceeding against Carty in superior court. On October 29, 2001, Carty was once again adjudged to be an SVP and ordered re-committed to a second two-year term.

While Carty was serving his second civil commitment term, United States Magistrate Judge James F. Stiven filed his report pursuant to 28 U.S.C. § 636(b)(1) on February 10, 2003, recommending that Carty's federal habeas petition be denied. Carty filed objections to the Magistrate Judge's Report and Recommendation. On May 23, 2003, the San Diego County District Attorney initiated a third commitment proceeding against Carty in San Diego Superior Court before the second two-year term for Carty's October 2001 re-commitment expired.

While the San Diego County District Attorney's May 2003 re-commitment petition was pending in state court, District Judge Irma E. Gonzalez conducted a *de novo* review of Carty's objections to the Magistrate Judge's Report and Recommendation. On July 31, 2003, the district court filed an order adopting the Magistrate Judge's Report and Recommendation and denied Carty's habeas petition.[4] The district court concluded that habeas relief was not warranted. According to the district court, the California Court of Appeal's decision that Carty was not denied his due process rights when the superior court relied on his probation report to civilly commit him was not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

On October 24, 2003, after the district court denied Carty's habeas petition, a commitment hearing was held in superior court on the San Diego County District Attorney's pending re-commitment petition. This hearing was to determine whether Carty should be re-committed for a third two-year term. Following the hearing, a jury unanimously determined that Carty was no longer an SVP, and the superior court ordered Carty unconditionally released from civil commitment the same day.

Although he is no longer civilly committed as an SVP, Carty, through appointed counsel, now appeals the district court's denial of his habeas petition which challenged his initial civil commitment. Carty argues that had the district court granted his habeas petition, then his initial civil commitment (in June 1999) and his second re-commitment (in October 2001) would have been nullified, and as a result, he would not need to verify his residency and employment every ninety

---

[4]In its order, the district court also granted a Certificate of Appealability "as to the claim that during the civil commitment hearing, the state court improperly considered the facts underlying the five counts to which petitioner pled guilty pursuant to *People v. West*."

days, as required by the California SVP Act. *See* Cal. Penal Code § 290(a)(1)(E) ("[E]very person who has ever been adjudicated a sexually violent predator . . . shall, after his or her release from custody, verify his or her address no less than once every 90 days and place of employment, including the name and address of the employer . . . .").

## II.   ANALYSIS

### A.   The Case is Not Moot

**[1]** Before we consider the merits of Carty's petition, we must determine "whether it presents a case or controversy under Article III of the Constitution." *Jackson v. Cal. Dep't of Mental Health*, 399 F.3d 1069, 1071 (9th Cir. 2005); *see also Caswell v. Calderon*, 363 F.3d 832, 836 (9th Cir. 2004) ("A case is moot if it does not satisfy the case-or-controversy requirement of Article III, § 2, of the Constitution.").

> The case-or-controversy requirement demands that, through all stages of federal judicial proceedings, the parties continue to have a personal stake in the outcome of the lawsuit. This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.

*Caswell*, 363 F.3d at 836 (citations and quotation marks omitted). Upon release, "some concrete and continuing injury other than the now-ended incarceration or parole — some 'collateral consequence' of the conviction — must exist if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Here, the State contends (1) that Carty has been released from civil commitment and there is no collateral consequence as a result of his *prior* adjudication as an SVP; and (2) that even if there is a collateral consequence, a favorable

judicial decision will not provide Carty with redress. As discussed below, we disagree with both contentions.

### 1.   Collateral Consequences Exist

As an SVP, Carty must verify his address and place of employment every ninety days with the California Department of Justice. According to the State, this obligation to merely "verify" residency and employment information every ninety days under California Penal Code section 290(a)(1)(E) does not meet the case or controversy requirement of Article III because this obligation is independent of Carty's civil commitment as an SVP. *See* Cal. Penal Code § 290(a)(1)(A) (requiring lifetime registration of specified sex offenders). We disagree.

**[2]** Carty's injury is continuing and actual because, as a former SVP, he is subject to incarceration for up to a year if he fails to verify his residence and employment record every ninety days. *See* Cal. Penal Code § 290(a)(1)(E) & (g)(5). This amounts to an injury in fact. *See Jackson*, 399 F.3d at 1073 (stating that the continuing effects of commitment may be significant enough to satisfy the injury in fact requirement for standing, and a decision invalidating the state court's order would remedy those continuing effects). Thus, we conclude that Carty is suffering a concrete and continuing injury sufficient to satisfy Article III's case or controversy requirement.

### 2.   Relief is Available

Because Carty is no longer committed under the June 1999 initial civil commitment order that he challenged in his habeas petition, the State contends that we cannot provide Carty with any meaningful relief. This is not true.

Carty first argues that our decision in *Hubbart v. Knapp*, 379 F.3d 773 (9th Cir. 2004), controls as to whether his appeal is moot. There, the State argued that Hubbart's claim

that his commitment under the SVP Act violated his constitutional rights was moot because Hubbart petitioned for habeas relief from his initial term of confinement, which had expired. We held that Hubbart's petition was *not* moot because his claims were capable of repetition yet evading review. *See id.* at 777-78 (noting that a two-year commitment under the SVP Act is too short a time for the validity of the commitment to be fully litigated). We stated that an action is capable of repetition yet evading review when: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id.* at 777 (citation and internal quotation marks omitted). However, in this case, unlike *Hubbart*, Carty cannot show that the claim in his habeas petition challenging the validity of his June 1999 initial civil commitment is capable of repetition yet evading review: in October 2003, Carty was released after a jury determined, beyond a reasonable doubt, that he was no longer an SVP and should not be re-committed for a third term.

Carty next contends that the second re-commitment proceeding in October 2001 was tainted because the San Diego County District Attorney was not required to prove "substantial sexual conduct" a second time, but merely relied on the finding from the June 1999 initial civil commitment hearing. In essence, Carty argues (1) that the District Attorney could not have legally moved to re-commit him in October 2001 absent the earlier unconstitutional June 1999 initial commitment; and (2) that the District Attorney was not required to re-prove at the October 2001 hearing that he perpetrated "substantial sexual conduct" on his child victims. Consequently, Carty states that our court could allow him, if necessary, to seek leave from the district court to amend his April 2001 federal habeas petition to challenge the second re-commitment in October 2001 on the same grounds as he currently challenges his initial civil commitment in June 1999.

**[3]** Carty's second argument has merit. Although Carty's instant appeal challenges only his June 1999 initial civil commitment proceeding, if we conclude that the state court's finding of "substantial sexual conduct" at the June 1999 hearing was unconstitutional, then Carty's October 2001 hearing would also be unconstitutional. Put another way, if we find Carty's due process argument persuasive, we can strike both the June 1999 civil commitment and the October 2001 re-commitment, and relieve Carty from the additional reporting requirements placed on an SVP. Accordingly, Carty's appeal is not moot because we *could* grant him relief.

## B. Carty's Sixth Amendment Right to Confrontation and Fourteenth Amendment Due Process Rights Were Not Violated

During Carty's civil commitment proceedings before the San Diego Superior Court, the San Diego County District Attorney used documentary evidence that included hearsay to prove that Carty engaged in "substantial sexual conduct" against his child victims. Carty contends that the district court erred in denying him habeas relief because the District Attorney's use of this documentary evidence violated his constitutional rights. With the demanding standards governing federal habeas relief under 28 U.S.C. § 2254 in mind, we address the merits of Carty's appeal, and conclude that the district court did not err in denying Carty habeas relief.

### 1. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition cannot be granted unless a state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent if the state court (1) arrived at a conclusion opposite to that reached by the Supreme Court on

a question of law or (2) confronted facts that are materially indistinguishable from relevant Supreme Court precedent but arrived at an opposite conclusion. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" of Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *see also Powell v. Galaza*, 328 F.3d 558, 563 (9th Cir. 2003) ("The state court need not cite or even be aware of the governing Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (internal quotation marks omitted). Subject to these limitations, we review *de novo* the district court's denial of a habeas petition, *see Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005), looking to the "last reasoned decision" by a state court, *see Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), which in this case is the California Court of Appeal's unpublished opinion.

## 2. Carty's Sixth Amendment Rights

Carty points out that in June 1999 the San Diego County District Attorney used documentary evidence — as permitted by the SVP Act — to prove that he was an SVP who required civil commitment. Carty then argues that he was deprived of his Sixth Amendment right to confront his accusers (child victims) in court, to have them testify under oath, and to cross-examine them on the documentary evidence that contained their statements that he had engaged in "substantial sexual conduct" against them. This argument fails because the commitment proceedings under the SVP Act are civil, not criminal.

**[4]** The "fact that a proceeding will result in loss of liberty does not *ipso facto* mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment." *Middendorf v. Henry*, 425 U.S. 25, 37 (1976). We recognize that involuntary civil commitment "constitutes a significant depri-

vation of liberty that requires due process protection."
*Addington v. Texas*, 441 U.S. 418, 425 (1979). But the Sixth
Amendment right to confrontation does not attach in civil
commitment proceedings. *Cf. United States v. Sahhar*, 917
F.2d 1197, 1205-06 (9th Cir. 1990) ("[F]ederal commitment
serves a regulatory, rather than punitive, purpose and section
4246 [permitting civil commitment of mentally incompetent
prisoners due for release] need not incorporate the right to a
jury trial."). Indeed, "the procedures required for a civil com-
mitment are not nearly as rigorous as those for criminal trials,
or even juvenile proceedings." *Id.* at 1206 (internal citations
omitted). We therefore reject Carty's argument that his Sixth
Amendment rights were violated during his initial civil com-
mitment proceeding in June 1999.

### 3.  Carty's Fourteenth Amendment Due Process Rights

As originally enacted, the SVP Act did not permit the use
of documentary evidence. The California State Legislature,
however, modified the SVP Act "after prosecutors com-
plained that they must bring victims back to court to re-
litigate proof of prior convictions." *People v. Otto*, 109 Cal.
Rptr. 2d 327, 333 (2001) (citation and internal quotation
marks omitted).

Carty argues that his substantive due process rights were
violated when the San Diego County District Attorney used
— as permitted by the SVP Act — documentary evidence to
prove that Carty engaged in "substantial sexual conduct" with
his child victims. Specifically, Carty complains that the supe-
rior court improperly admitted statements from his victims
(ages five through fourteen) as memorialized in his probation
report. In addition, Carty argues he was not given the same
protections as California residents facing general civil com-
mitment proceedings. In short, Carty claims that his constitu-
tional rights were violated when unreliable documentary

evidence was used against him during his civil commitment proceedings under the SVP Act.

To analyze Carty's due process challenge, we first look to *Vitek v. Jones*, 445 U.S. 480 (1980), where the Supreme Court decided whether Nebraska violated a prisoner's due process rights by transferring him from prison to a state mental hospital for treatment. The Court held that in order to satisfy due process, a prisoner facing involuntary commitment to a mental hospital is entitled to: (1) written notice; (2) a hearing at which the evidence being relied upon for the commitment is disclosed to the prisoner; (3) an opportunity at the hearing for the prisoner to be heard in person, to present testimony and documentary evidence, and to cross-examine witnesses called by the State; (4) an independent decision-maker; (5) reasoned findings of fact; (6) legal counsel; and (7) effective and timely notice of these rights. *See id.* at 494-97.

**[5]** Next we look to the Supreme Court's decision in *Kansas v. Hendricks*, 521 U.S. 346 (1997), where the Court considered a substantive due process challenge to the Kansas SVP Act. *See id.* at 356. The Court rejected Hendrick's challenge and stated that "[w]e have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." *Id.* at 357. The Court noted that "[t]he numerous procedural and evidentiary protections afforded" a potential SVP did "not transform a civil commitment proceeding into a criminal prosecution," but rather demonstrated that the Legislature had "taken great care to confine only a narrow class of particularly dangerous individuals, and then only after meeting the strictest procedural standards." *Id.* at 364-65. In the end, the Court held that the Kansas SVP Act comported with due process requirements and entailed civil and not criminal proceedings for constitutional purposes. *Id.* at 370-71.

**[6]** In addition to these decisions, the California Supreme Court's opinion in *Otto* is enlightening. In *Otto*, the California

Supreme Court concluded that the SVP Act procedures, including its statutory hearsay exception, did not violate a defendant's right to due process. *See Otto*, 109 Cal. Rptr. 2d at 334-38. Otto challenged the use of child victim statements contained in a probation report that were used to establish "substantial sexual conduct" in his SVP Act civil commitment proceedings. Like Carty, Otto argued that the victim statements did not possess "sufficient indicia of reliability to satisfy due process." *See id.* at 335. The California Supreme Court disagreed, and noted that although Otto pled no contest, the factual basis for his plea was contained in the police reports which detailed the predicate offenses. *See id.* The California Supreme Court also noted that Otto received the probation report prior to his sentencing on the predicate offenses and did not challenge its contents when he entered his guilty plea before the state trial court. *See id.* at 336-37. Carty, like Otto, received his probation report prior to being sentenced in April 1991 for the predicate offenses and did not challenge the contents of the probation report.

As to Otto's confrontation claims, the California Supreme Court noted that Otto did not attempt to call any witnesses of his own, and that Otto had the opportunity to confront his child victims at the time the underlying criminal charges were filed, "but instead chose to accept a plea bargain." *Id.* at 338. Similarly, Carty decided in April 1991 to accept a plea bargain as to the seven counts of lewd acts against children instead of confronting these witnesses at the time the underlying charges were filed.

[7] In light of *Vitek*, *Hendrick*, and the persuasive opinion in *Otto*, we reject Carty's current due process challenge.[5]

---

[5]Carty argues that section 6600(a)(3) violates the Equal Protection clause. To succeed in this argument, Carty must demonstrate that section 6600(a)(3) does not survive rational basis review. *See, e.g., Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-67 (2001). Relieving victims from the onus of testifying in SVP Act civil commitment proceedings about the trauma they suffered clears the rational basis hurdle. *See Otto*, 109 Cal. Rptr. 2d at 333. Thus, we conclude that Carty's Equal Protection argument fails.

First, before being civilly committed under the California SVP Act, Carty was accorded all of the procedural protections identified in *Vitek* during his June 1999 initial civil commitment hearing.

[8] Second, Carty fails to identify any Supreme Court case which imposes an obligation on the San Diego County District Attorney to proffer only live testimony at civil commitment hearings under the SVP Act. In these hearings, the superior court needs to find facts relating to the circumstances of sex offenses which are predominantly committed in private. Because of the incentive for defendants to enter into plea agreements, many of the facts underlying sex offenses are not determined by a trier of fact in a criminal proceeding. This means that the main witnesses at a sex offense trial usually are the victim and the offender. That is why, unlike other civil commitment proceedings, the SVP Act's special hearsay exception "intend[s] to relieve victims of the burden and trauma of testifying about the details of the crimes." *Otto*, 109 Cal. Rptr. 2d at 333. Carty argues that the admission of the victims' statements in the probation report was fundamentally unfair. He wants the government — at the civil commitment proceedings under the SVP Act — to put on its case by bringing in live witnesses instead of using documentary evidence contained in the probation report so that he can cross-examine the child victim witnesses. But instead of accepting a plea bargain eight years earlier, Carty could have gone to trial and confronted the child victim witnesses. His waiver of a trial and his failure to challenge the content of the victims' statements in the probation report at the time of his sentencing undercuts this argument in light of the reasoning in *Otto*. Furthermore, the documentary evidence used by the superior court during Carty's initial civil commitment hearing in June 1999 possessed sufficient indicia of reliability to meet California's statutory hearsay exception. *See* Cal. Welf. & Inst. Code § 6600.1 ("The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary

evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of Mental Health."); *Cf. E.B. v. Verniero*, 119 F.3d 1077, 1108-09 (3rd Cir. 1997) ("The prosecutor may base her case entirely on hearsay, if it shows indicia of reliability."). In fact, the superior court gave Carty the opportunity to challenge the documentary evidence contained in his probation report at his initial civil commitment hearing in June 1999. Equally important, during Carty's June 1999 initial civil commitment hearing, the superior court carefully evaluated a medical report and all of the victim statements contained in the probation report, and concluded that only two of the five acts committed by Carty against the child victims involved conduct that constituted "substantial sexual conduct."

**[9]** Finally, even looking to the Supreme Court cases on which Carty relies, he was not denied the necessary safeguards required by the Constitution. Particularly, at his initial civil commitment hearing in June 1999, Carty was represented by counsel, was given an opportunity to challenge the evidence used by the District Attorney, waived his right to a trial by a jury, and was adjudged, beyond a reasonable doubt, as an SVP who required civil commitment. *See, e.g., Addington*, 441 U.S. 432-33 (holding that "to meet due process demands," the standard of proof for civil commitment proceedings must be higher than the preponderance-of-the-evidence standard); *Humphrey v. Cady*, 405 U.S. 504, 508-14 (1972) (concluding that an evidentiary hearing was warranted when an individual was committed after his prison sentence allegedly without a jury trial, without counsel, and without an opportunity to challenge "the initial determination that his crime was sexually motivated"); *Baxstrom v. Herold*, 383 U.S. 107, 111-12 (1966) ("For purposes of granting judicial review before a jury of the question whether a person is mentally ill and in need of institutionalization, there is no conceivable basis for distinguishing the commitment of a person who

is nearing the end of a penal term from all other civil commitments.").

**[10]** "Due process calls for an individual determination before someone is locked away." *Demore v. Kim*, 538 U.S. 510, 551 (2003). That is what happened here.

## III.   CONCLUSION[6]

**[11]** The California Court of Appeal's conclusions that the admission of documentary evidence during Carty's June 1999 civil commitment hearing (1) did not render his civil commitment proceedings under the SVP Act fundamentally unfair, and (2) did not violate his substantive due process rights, was not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court. Accordingly, we **AFFIRM** the district court's order denying Carty's habeas petition.

---

[6]The State's August 9, 2004, request for judicial notice of certain state court documents is granted.