SILVERMAN, Circuit Judge,
concurring in the result:
Chief Judge Kozinski recently designated a separate opinion of his, not as a dissent or a partial concurrence, but as a “disagree[ment] with everyone.” Garfias-Rodriguez v. Holder, 702 F.3d 504 (9th Cir.2012). I chuckled at the time, but not any more. I now find myself in the posi *653 tion of agreeing with the result reached by-Judge Adelman affirming the denial of a writ of habeas corpus, but only with the result; agreeing with the portion of Judge Tashima’s dissent demonstrating the constitutional requirement of a factual basis to support a People v. Wesi-type no contest plea; but ultimately disagreeing with Judge Tashima about whether there was, indeed, a factual basis in this case for second degree murder under California law.
I start with Judge Tashima. I agree with him that a factual basis is required for an Alford plea or a no contest plea entered pursuant to People v. West, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970), California’s analogue to Alford. As Judge Tashima cogently shows, a court taking a no contest or Alford-type plea must satisfy itself that there is a factual basis to believe that the defendant is, indeed, guilty of the crime for which he will be convicted. A factual basis is constitutionally required because of the importance of protecting the innocent and assuring that the plea is the product of free and intelligent choice. North Carolina v. Alford, 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
Here, the trial court failed to establish a factual basis at the time it accepted Lof-tis’s no contest plea. That error gives rise to the next question: Whether a reviewing court may look to a pre-sentence report prepared by the probation department to see whether the error was harmless — that is, to ascertain whether the report contains facts that support the plea. The answer to that question is yes, and Loftis does not argue otherwise. See United States v. Mancinas-Flores, 588 F.3d 677, 681-83 (9th Cir.2009); Carty v. Nelson, 426 F.3d 1064, 1074-75 (9th Cir.2005). In any event, there are no clearly established United States Supreme Court decisions to the contrary.
The final question is whether the facts set forth in the probation report establish a factual basis for second degree murder under California law. The answer to this question begins and ends with the principle that the California courts are the expositors of California law. The California courts tell us what California law covers; we don’t tell them. Bradshaw v. Richey, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Edüd 407 (2005) (“We have repeatedly held that a state court’s interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.”). In this case, the California Court of Appeal reviewed the facts set forth in the probation report and, analyzing California cases and interpreting California law, concluded that those facts would support a conviction of second-degree murder under the California Penal Code.[1]
*654 That is the end of the matter. Alford requires that the record contain a factual basis for the plea, not proof beyond a reasonable doubt. United States v. Neel, 547 F.2d 95, 96 (9th Cir.1976) (per curiam).
For these reasons, I concur in affirming the district court’s denial of habeas relief.

. The Court of Appeal wrote:
California law recognizes three theories of second degree murder, one of which is implied malice murder. (People v. Robertson (2004) 34 Cal.4th 156, 164, 17 Cal. Rptr.3d 604, 95 P.3d 872 [malice is implied when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life].)
Here, the probation report contained facts supporting a finding that defendant knew the consequences of his failure to seek medical care for Celena placed her life in danger. He observed her adverse reaction and her continuing condition. He suggested taking her to the hospital and therefore recognized the seriousness of her situation. The facts also show defendant acted with conscious disregard for Celena's life. He knew she was ill and did nothing to help her. The hospital was only a short distance from his house. He and his co *654 horts simply took Celena along in the vehicle when they headed to the Palace casino. When she quit breathing, defendant mentioned the hospital to his cohorts but he made no real effort to get her there. On the way to the casino, they stopped the vehicle, placed Celena’s body on the roadside and covered it with tumbleweeds. When they arrived at the casino, defendant played slot machines. In sum, while Cele-na was experiencing a violent reaction to the methamphetamine and was obviously ailing, even when she quit breathing, defendant consciously disregarded her life-threatening condition and deprived her of medical care, knowing he was placing her life in danger.
"[T]he common law does not distinguish between homicide by act and homicide by omission.” (People v. Burden (1977) 72 Cal.App.3d 603, 618, 140 Cal.Rptr. 282; see also People v. Dellinger (1989) 49 Cal.3d 1212, 1220, 264 Cal.Rptr. 841, 783 P.2d 200.) Passive conduct or omissions may satisfy the actus reas component of murder where the person is under a duty to act. (See People v. Protopappas (1988) 201 Cal. App.3d 152, 168, 246 Cal.Rptr. 915 [doctor’s failure to assist his patient after inappropriately administering anesthesia]; People v. Burden, supra, at pp. 620-621, 140 Cal.Rptr. 282 [father’s failure to feed his child].) Defendant owed Celena a duty to act. He created the substantial risk by selling her the methamphetamine. He observed her serious reaction to the drug and knew she was still sick when she entered the vehicle. Once she was in the vehicle with defendant and the others, she had no other access to help. At that point, she was entirely dependent on defendant and the others for assistance. We believe these circumstances, which placed Celena in grave peril, resulted in a duty on defendant's part to act. (See, e.g., Health & Saf.Code § 11704, subd. (1) [drug dealer liability; person who knowingly participates in marketing of illegal controlled substances is liable for civil damages; person may recover damages for injury resulting from an individual’s use of illegal controlled substance]; Williams v. State of California (1983) 34 Cal.3d 18, 23, 192 Cal.Rptr. 233, 664 P.2d 137 [no affirmative duty to act absent special relationship unless actor has created a situation of peril increasing risk of harm]; McGettigan v. Bay Area Rapid Transit Dist. (1997) 57 Cal.App.4th 1011, 1021-1022, 67 Cal.Rptr.2d 516 [same]; Rest. 2d Torts § 314A, comment d. [duty to protect person against unreasonable risk of harm extends to risks arising out of the actor’s own conduct].)
People v. Loftis, 2007 WL 1248492 at *5-6 (footnote citing to CALCRIM No. 520 and CALJIC No. 8.31 omitted).